**DISTRICT OF COLUMBIA, a municipal corporation, Appellant,**

v.

**Malvina STEWART, Administratrix of the Estate of Clifton C. Watson, deceased, Appellee.**

**No. 5632.**

District of Columbia Court of Appeals.

Argued May 3, 1971.

Decided June 11, 1971.

Ted D. Kuemmerling, Asst. Corp. Counsel, with whom C. Francis Murphy, Acting Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, were on the brief, for appellant.

Reginald B. Jackson, Washington, D. C., for appellee.

Before HOOD, Chief Judge, and NEBEKER and YEAGLEY, Associate Judges.

NEBEKER, Associate Judge:

This is an appeal by the District of Columbia from an order granting summary judgment in favor of the administratrix of the estate of Clifton C. Watson, deceased, a former patient at St. Elizabeths Hospital. The government contends that the trial court erred in ruling that the District of Columbia was estopped from recovering the full cost of the decedent's care because an employee of the hospital purported to contract to accept a lesser amount in satisfaction of the obligation.

In September 1964, decedent entered St. Elizabeths Hospital as a voluntary patient and signed an agreement for his care whereby he was to pay a per diem rate to be specified by the hospital. Two months later appellee, a niece of the decedent and apparently his closest living relative, was appointed conservator of his estate. Appellee, as conservator, made payments for the patient's care at the per diem rate for about one and one-half years.[1] In March 1966, she signed another agreement witnessed by a hospital employee which purported to reduce the cost of the patient's care by about one half—to $150 per month. It appears that payment of the full per diem rate was rapidly depleting the patient's personal property and this reduction in the monthly rate relieved the conservator of the necessity of selling the patient's home which was his only remaining asset.[2] This

---

1. In January 1965, appellee and a hospital employee executed an agreement which provided that cost of the patient's care would be "at the specified per diem rate until savings are reduced to $300.00 and thereafter at the rate of $151.00 [sic] per patient month."

2. This point was made by the District of Columbia in its memorandum of points and authorities attached to the opposition to appellee's motion for summary judgment. This motive is also reflected by the agreement discussed in note 1, *supra,* and the financial records filed by appellee in

reduced amount was paid by appellee out of the patient's funds until his death in 1969.

Since decedent's estate was sufficient to pay the difference between what was paid under the contract and the actual cost of his care to the hospital, a claim for this amount was submitted to appellee in her capacity as administratrix of the decedent's estate. This claim was rejected on the ground that the estate was not obligated to pay more than what had already been paid under the 1966 contract.

■ In a subsequent action brought by the District of Columbia to recover the amount in dispute, appellee successfully raised an estoppel defense based on the latest contractual agreement. While estoppel may be applied to the District of Columbia in certain limited situations when the equities are strongly in favor of the party invoking the doctrine,[3] the District of Columbia must first have authority to act before conduct of its employees can be the basis of an estoppel defense. National Hospital Service Society, Inc. v. Jordan, 76 U.S.App.D.C. 26, 128 F.2d 460, cert. de-

nied, 317 U.S. 664, 63 S.Ct. 65, 87 L.Ed. 534 (1942).[4] No such authority existed. *See* footnote 6, *infra.*

■ In this case, the District of Columbia's claim for the unreimbursed costs of caring for the mentally ill patient[5] was based on the statutory provision that

"the estate of the mentally ill person, if the estate is sufficient for the purpose, shall pay the cost to the District of Columbia of the mentally ill person's maintenance, including treatment, in a hospital in which the person is hospitalized under this chapter. * * *"[6]

This section makes it clear that the estate of a mentally ill person is statutorily obligated to pay the full cost of his care and maintenance if it is sufficient to do so. It follows that since decedent's estate was sufficient to pay for his care, the hospital employee was without authority to relieve the decedent or his estate from this obligation imposed by law. Consequently, the District of Columbia cannot be estopped from bringing an action for reimbursement.

Reversed and remanded for further proceedings.

---

the United States District Court for the District of Columbia as part of her duties as conservator of the estate.

3. District of Columbia v. Cahill, 60 App. D.C. 342, 54 F.2d 453 (1931). Although not decisive of this case, the equities favor the government as much if not more than the appellee. While it can be said that appellee may not personally have been fully informed of the estate's legal obligations under D.C.Code 1961, § 21–586(a) (Supp. V, 1966) when the last contract was executed, the action by the hospital employee apparently allowed the estate to pay a lesser amount for the patient's care rather than force the sale of his home which was being rented in his absence. This would not only allow the rental income to be used to pay for part of the patient's care but would also assure that the patient would have a home to return to if he recovered his health.

4. For similar authority in other jurisdictions, *see* State v. Metrusky, 140 Conn. 26, 97 A.2d 574 (1953); Knackstedt v. Dept. of Mental Health, 69 Ill.App.2d 98, 216 N.E.2d 517 (1966). *See also* E. Mc-

Quillen, Municipal Corporations § 29.104c (3d ed. rev. 1966); 1 A.L.R.2d 338, 344–353 (1948).

5. Mr. Watson was a mentally ill person as defined in D.C.Code 1961, § 21–351 (Supp. IV, 1965), since he voluntarily requested hospitalization for the care and treatment of a mental illness and was required by D.C.Code 1961, § 21–353 (Supp. IV, 1965) to be examined and found in need of hospitalization before he was admitted to the hospital. These provisions were in effect when he was hospitalized in 1964. We also note that appellee was appointed conservator of Mr. Watson's estate due to his mental and physical incapacity.

6. D.C.Code 1961, § 21–586(a) (Supp. V, 1966). Another related provision, D.C. Code 1961, § 32–406, provided in part:
   "Whenever there are vacancies, private patients from the District may be received at a rate of board to be determined by the visitors, to be in no case less than the actual cost of their support, * * *"