Laurence E. COFFIN, Jr., Appellant,

v.

DISTRICT OF COLUMBIA, a municipal corporation, Appellee.

No. 7386.

District of Columbia Court of Appeals.

Argued Feb. 27, 1974.

Decided May 30, 1974.

5. Criminal Jury Instructions for the District of Columbia, Standard Instruction, 5.06 (2d ed. 1972).

William F. Reed, Washington, D. C., for appellant.

Leo N. Gorman, Asst. Corp. Counsel, Washington, D. C., with whom C. Francis Murphy, Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, Washington, D. C., were on the brief, for appellee.

Before KELLY, KERN and NEBEKER, Associate Judges.

NEBEKER, Associate Judge:

This appeal is from an order entered at the conclusion of plaintiff-appellant's case denying recovery in a suit for breach of contract. The question is whether appellant may recover from the District of Columbia any part or all of an amount claimed for consultation services rendered to the Office of Community Renewal (OCR) even though there was no prior underlying formal, written contract. The trial court concluded that no recovery was available. We hold that the District of Columbia is liable for payment of $2,500, an amount which the District's contracting agent is authorized to expend without formal Procurement Office approval.

Appellant is a landscape architect and city planner. On previous occasions, based upon formalized, negotiated-fee contracts, appellant had rendered professional services to the Office of Beautification and the OCR. In the fall of 1968, the then Acting Director of OCR approached appellant about serving as a staff consultant to the OCR. Both parties agreed orally to a consultation fee of $20 per hour. Services were rendered from September 1968 to April 1969.

Upon request by the Acting Director, appellant submitted a written summary of the time devoted to performing those services. He claimed 163.5 consultation hours, totaling a fee of $3,270. That summary was initialed by the Acting Director and given to his office manager for processing and payment. Several days later, the Acting Director resigned. The summary was never processed though appellant made an unproductive attempt in that direction to secure payment. Evidence in the record reveals that payment was not made because there was no previous underlying written contractual basis for doing so.

The former Acting Director testified at trial that, by delegation from the Procurement Office, he had authority to engage consultants and that appropriated funds were available to pay for appellant's services. He further testified that other consultants were hired and that the contracting procedure in some cases was substantially similar to the instant case, *viz*, an oral agreement would later be formalized by submission of a written claim and approval thereof.

The District argued to the trial court that there was no contract between the parties because a statutorily required contract procedure was not followed. Therefore, it urged that at best there was merely an oral agreement between the Acting Director and the appellant. The judge directed a verdict based on the fact that the contract was not in writing as required by D.C.Code 1973, §§ 1–801 and 1–803.[1]

---

1. D.C.Code 1973, § 1–801 provides:
   The Commissioner of the District of Columbia, in the exercise of his duties, powers, and authority, shall make no contract, nor incur any obligation other than such contracts and obligations as are hereinafter provided for and shall be approved by Congress.

D.C.Code 1973, § 1–803 provides:
   All contracts made by the Commissioner of the District of Columbia shall be in writing, and shall be signed by the parties making the same, and a copy thereof shall be filed in the office of the secretary of the District.

■ It is a well-recognized principle that a would-be contractor with a municipal corporation is deemed imputed with knowledge as to the scope of the contracting agent's authority. As stated in 10 McQuillin, Municipal Corporations § 29.04 at 219–22 (3d ed. 1966):

> The general rule is well settled and is constantly enforced that one who makes a contract with a municipal corporation is bound to take notice of limitations on its power to contract and also of the power of the particular officer or agency to make the contract. That is, persons dealing with a municipal corporation through its agent are bound to know the nature and extent of the agent's authority in accordance with long-existing and well-settled general rules obtaining in the law of agency generally, and applying to dealings with both artificial and natural persons. [Footnotes omitted.]

The right to contract has been delegated by Congress to the Commissioner with the limitation that contracts are to be in writing, signed by parties, and filed in the office of the secretary of the District. See D.C.Code 1973, §§ 1–801 and 1–803. The Commissioner has, in turn, delegated this contracting authority to certain designated "Contracting Officers". See Organizational Order No. 9, D.C.Code 1973, Title 1, Contracting Officers, Administration, Appendix at 234. Further, each appointed "Contracting Officer" is authorized to redelegate the authority to officials under his control. *Ibid.* Significantly, one of those appointed "Contracting Officers" is the Director of the Department of General Services who, along with the authority to contract, has been directed, *inter alia,* to

> [c]ollaborate with Contracting Officers in developing and implementing effective contracting procedures which are designed to expedite the work of the Contracting Officers. [*Id.* at 235.]

The Procurement Office, an organizational entity within the Department of General Services, has responsibility for, *inter alia,* "developing, installing, and supervising effective and simplified purchasing policies and procedures for departments and offices of the District of Columbia Government." *See* Organizational Order No. 3, D.C.Code 1973, Title 1, Department of General Administration, Appendix at 230. *See also* Commissioner's Order (Organization Action) No. 69–96, D.C.Code 1973, Title 1, Establishment of Office and Departments, Appendix at 254. In light of these responsibilities, the Procurement Office has developed contracting procedures to be followed in procuring goods and services for the District of Columbia.

The following sections of the District of Columbia Procurement Manual (the Manual) are pertinent to the instant case. Section 4–806 provides that professional service contracts in excess of $2,500 "must be entered into by the D.C. Procurement Officer, and all D.C. agencies must requisition their requirements for such services from the D.C. Procurement Officer in accordance with [established] procedures and guidelines . . . ." Section 4–807 of the Manual, relating to contracts of $500 or less, provides that services may be procured through a purchase order. That order must contain the pertinent terms of the agreement. Also, a written acceptance by the contractor of the contract terms must be obtained by the department seeking the services. However, services that are repetitive in nature are to be contracted for by use of Form P.O. 12 rather than by use of purchase orders.

Section 4–808 of the Manual relates to contracts not in excess of $2,500 and provides that such contracts are to be negotiated by the agency seeking the services. The finished contract is to be prepared on Form P.O. 12. All such contracts are to be approved by the head of the department or his principal assistant. Significantly, it is stated that "[f]or purposes of this Part, authority is delegated to each department

and agency head to enter into contracts not to exceed $2500."

Section 4–809 of the Manual, pertaining to contracts for services in excess of $2,500, provides that the Procurement Office is responsible for negotiating and finalizing formal contracts with the parties who will render the services. The department or agency requesting the services does so by way of a written memorandum which contains, *inter alia,* a "detailed description of the services to be rendered, the period during which such service will be rendered, the unit cost of the service, i. e., per hour, per day, . . . etc., and the estimated total cost of the contract." Also to be submitted are supporting documents to assist the Procurement Office in the negotiating process. Finally, the section contains a cautionary statement that "NO SERVICES MAY BE OBTAINED UNTIL THE CONTRACT IS FINALLY APPROVED."

■ Clearly, the Acting Director has no authority to bind the District for services in excess of $2,500. With reference to the present appeal, no requisition was made nor were negotiations held between appellant and the Procurement Officer as required by Section 4–809 of the Manual. Further, and contrary to that section, services were rendered without a finally approved contract. Therefore, appellant's suit for full compensation may not be maintained.

We do note, however, that the Acting Director did have authority to bind the District for services not in excess of $2,500. Proceeding within the authority delegated to him pursuant to Section 4–808 of the Manual, the Acting Director was authorized to negotiate on behalf of the

District and to finalize the contract. Conspicuously absent from that section is the cautionary statement that services may not be rendered until there is an approved contract. Without such a restriction it is possible that negotiations, formal agreement, and the rendering of services may be fully performed before an agent completes the specified form. Indeed, this appears to be the posture of the instant case. This being the scope of the Acting Director's contracting authority, we conclude, assuming the other conditions of D.C.Code 1973, § 1–803, are satisfied, that the District is bound to pay for services not exceeding $2,500.

Section 1–803, *supra,* requires that a contract must be in writing but it does not define what is to be contained in that writing. It is significant that the appellant's written summary of time spent contains essentially the same information that is to be filed with the Procurement Office when requisitioning services in excess of $2,500. Specifically included in the summary is a detailed description of the services actually rendered (allocated according to specific projects); the time periods when services were rendered; the unit costs on an hourly basis; and the total cost of the services rendered. We further note that the other information requested by the Procurement Office in completing a Section 4–809 contract is also in the possession of the Acting Director.

■ Additionally, there is no disability encountered by the Statute of Frauds.[2] The work summary is in written form, it includes the terms of the agreement, and it is signed (initialed) by the District's agent.[3] It should also be noted that the

2. D.C.Code 1973, § 28–3502 provides:

An action may not be brought to charge . . . a person . . . upon an agreement that is not to be performed within one year from the making thereof, unless the agreement upon which the action is brought, or a memorandum or note thereof, is in writing, which need not state the consideration and signed by the party to

be charged therewith or a person authorized by him.

3. Uncontroverted testimony in the record reveals that the Acting Director, upon receipt of the writing, initialed it for processing. *See* Tr. at 35 for the following colloquy:
[COUNSEL] Q. You say you authorized it. What did you do? You received such a statement and what did you do?

Statute of Frauds traditionally does not encompass contracts such as the present one because performance was rendered and completed within the one-year period. *See* Campbell v. Rawlings, 52 App.D.C. 37, 280 F. 1011 (1922); *cf.* Snyder v. Hillegeist, 100 U.S.App.D.C. 368, 246 F.2d 649 (1957). We conclude that the writing satisfied statutory prerequisites.

■ D.C.Code 1973, § 1–803, also provides that the contract is to be filed in the office of the secretary of the District. Once again there is no specification as to when such act should take place. Such filing is solely within the responsibility of the District. Noncompliance, or possibly delinquent compliance, with such a requirement does not rest with appellant and should not isolate the District from its obligation to partially compensate appellant for his services.

Appellant alternatively contends that the District should be estopped from denying its liability for the full amount particularly when it has received benefit of appellant's services. In support of that contention, appellant cites several cases from this jurisdiction wherein estoppel has been applied either on behalf of or against the District of Columbia. *See* District of Columbia v. Stewart, D.C.App., 278 A.2d 117 (1971); National Hospital Service Society, Inc. v. Jordan, 76 U.S.App.D.C. 26, 128 F.2d 460, cert. denied, 317 U.S. 664, 63 S.Ct. 65, 87 L.Ed. 534 (1942); District of Columbia v. Cahill, 60 App.D.C. 342, 54 F.2d 453 (1931). In District of Columbia v. Stewart, *supra,* this court recognized that, as a result of conduct by its employees, estoppel may be applied against the District provided it has underlying authority to act in the specific area and the equities are strongly in favor of the party invoking the

doctrine. On this point as to whether or not estoppel should be applied, the case law and authorities have reached divergent conclusions.[4] McQuillin, *supra,* § 29.104a at 507, states:

> If the power is clearly vested but is irregularly or defectively exercised by the municipality and its officers and agents, the case presents a defective execution of the power only, and this affords a basis for the application of the doctrine of equitable estoppel . . . .

As we measure the equities, the following elements are significant. We have already recognized that the District does have the authority to contract and that to a limited amount, relating to the contract in question, the Acting Director had the authority to bind the District. The need for Procurement Office approval for a contract in excess of the $2,500 was not statutory but regulatory. There is no challenge by the District that services were not rendered nor that any of the work performed was unsatisfactory. Finally, as to the District, we note that it has benefited from the services.

■ As to appellant, it is established in the record that he is a professional who has performed services to the District on previous occasions under a negotiated-fee basis. He is charged with knowledge of the Acting Director's scope of contracting authority. Further, the objective of establishing and requiring compliance with specific contracting procedure is to protect against possible fraud being perpetrated on the District.

The test requires that the equities must strongly be in favor of the party invoking the estoppel doctrine and on this record we

[ACTING DIRECTOR] A. I said, all right . . . I agree with you—to this effect. I agree with what we have here. That is in essence what we would like to do. I will have it processed. At that point I turned it over to the woman who was acting as my office manager for processing.

[COUNSEL] Q. Did you initial this statement, . . . ?
[ACTING DIRECTOR] A. I think I did. In general I would. That is the way I authorized things.

4. *See* 1 A.L.R.2d 338 (1948); C. Antieau, Municipal Corporation Law § 16A.15 (1973).

are unable to conclude that the facts warrant such application. The order of the trial court is vacated and the case remanded with directions to enter judgment for appellant in the amount of $2,500.

So ordered.