**Robert E. NASH, Appellant,**

v.

**Walter E. WASHINGTON et al., Appellees.**

**No. 9885.**

District of Columbia Court of Appeals.

Argued Jan. 6, 1976.

Decided July 16, 1976.

---

Robert Beckerman, Washington, D.C., with whom Harold M. Thurston, III, Washington, D.C., Joanne Sgro, and Louis L. Joseph, Washington, D.C., were on the brief, for appellant.

James B. McDaniel, Sp. Asst. Corp. Counsel, Washington, D.C., with whom C. Francis Murphy, Corp. Counsel at the time the brief was filed, Louis P. Robbins, Principal Asst. Corp. Counsel, Richard W. Barton, Asst. Corp. Counsel, and James A. Price, Washington, D.C., Sp. Asst. Corp. Counsel, were on the brief, for appellees.

Before REILLY, Chief Judge, and YEAGLEY and MACK, Associate Judges.

MACK, Associate Judge:

This is an appeal from a decision by the trial court, on cross-motions for summary judgment, that the National Capital Housing Authority (NCHA) was not required to give appellant an administrative hearing prior to his eviction from a public housing apartment initially leased to his deceased mother and brother. The court reasoned that no pre-eviction hearing was required in view of the plenary hearing afforded in the Landlord and Tenant Branch of the Superior Court once a suit for possession was filed.[1] It refused to grant declaratory relief concerning appellant's substantive right to continued occupancy on the ground that this issue could be fully explored in the landlord-tenant proceeding. Because of new regulations promulgated during the pendency of this appeal, we reverse.

The relevant facts are that in November 1972 appellant, along with his mother Sallie R. Nash, his brother James M. Nash, and his sister Mary Thomas, moved into an apartment in a public housing project administered by appellee NCHA. Appellant's mother and brother signed a lease with NCHA on which appellant and his sister were listed as authorized residents. Sallie Nash and James Nash, the signatories to the lease, died in May 1973 and June 1974 respectively. Appellant notified NCHA of the deaths and continued to reside in the apartment with his sister (for whom he acts as legal guardian), making monthly rental payments to NCHA.

On January 29, 1975, appellant received a notice from NCHA stating that in accordance with the lease, the tenancy would terminate on March 1, 1975, due to changes in family size or composition[2] and

---

1. NCHA subsequently filed a suit for possession of the leased premises. The action is apparently being held in abeyance pending termination of this appeal.

2. Clause 6(b) of the lease allowed NCHA to terminate the tenancy upon 30 days notice if the tenant's family had "so changed in size or composition as to render inappropriate the Tenant's continued occupancy of the . . . premises."

that appellant had the right to file a complaint contesting the termination. On two occasions, appellant attempted to file a written complaint, but the complaints were not accepted on the ground that he had not signed a lease with NCHA. On February 24, 1975, he received a second notice which indicated that the tenancy would terminate on April 1, 1975, because he and his sister were no longer eligible for public housing.[3] Portions of the notice form advising tenants of their rights to invoke the standard grievance procedure were crossed out by type. On March 21, 1975, appellant instituted this action seeking the opportunity for an administrative hearing, in accordance with NCHA standard grievance procedures, to determine whether there was good cause for an eviction.

The record indicates that appellant and his sister are both disabled adults who have a combined monthly income of approximately $288. NCHA does not dispute, for the purposes of this appeal, that they are eligible to reside in public housing or to occupy the particular apartment in which they now reside, but instead argues that they must reestablish their eligibility and priority status.

Appellant raises two main issues on appeal: (1) Whether he is entitled to a pre-eviction administrative hearing under federal regulations[4] or as a matter of procedural due process; and (2) Whether, as a member of deceased tenants' family, he has a substantive right to continued occupancy of a public housing unit after the tenants' deaths under applicable federal laws[5] or the due process clause of the Fifth Amendment.[6] We hold that under current federal regulations promulgated by the Department of Housing and Urban Development (HUD),[7] appellant is entitled to invoke NCHA grievance procedures to determine whether there is good cause to evict him. We also conclude that, due to the insufficiency of the record and the posture of this case, a decision on the extent of appellant's substantive rights would be premature.

NCHA is a public housing agency authorized to receive federal funds for the administration of low cost housing projects in the District of Columbia in accordance with the United States Housing Act of 1937, 42 U.S.C. § 1401 *et seq.* (1970). *See* D.C.Code 1973, § 5–103 *et seq., as amend-*

---

3. Clause 6(c) of the lease gave NCHA the authority to terminate a tenancy if "[t]he Tenant is no longer eligible for occupancy under any applicable law or regulation."

4. Appellant relies on regulations issued by the Department of Housing and Urban Development (HUD) on February 22, 1971, in a circular to local housing authorities, RHM 7465.9; or alternatively on HUD regulations issued on August 7, 1975. 40 Fed.Reg. 33406 (1975), *amending* 24 C.F.R. Part 866 (1975).

5. Primary reliance is placed on the United States Housing Act of 1937, 42 U.S.C. § 1401 *et seq.* (1970).

6. Appellant also argues that because NCHA accepted rental payments from him for six months after receiving notification of the lessees' death, it is estopped from denying that he is a tenant. Although District of Columbia agencies are subject to the estoppel doctrine, application of the doctrine to a

governmental unit depends on the scope of the agency's authority and on a balancing of the public and private interests involved. *See Coffin v. District of Columbia*, D.C.App., 320 A.2d 301 (1974); *District of Columbia v. Stewart*, D.C.App., 278 A.2d 117 (1971); *National Hospital Service Society, Inc. v. Jordan*, 76 U.S.App.D.C. 26, 128 F.2d 460, *cert. denied*, 317 U.S. 664, 63 S.Ct. 65, 87 L.Ed. 534 (1942). *See also* 2 F. Cooper, State Administrative Law 506–11 (1965). Appellant has not alleged that he acted in reliance on the agency's action or that he was prejudiced in any way by the implied approval of his continued occupancy. Therefore, assuming NCHA has the authority to create a tenancy absent a written lease agreement, we do not think that this is an appropriate case in which to apply the estoppel doctrine in light of the public interest in providing low cost housing to the most needy families.

7. HUD Grievance Procedures and Requirements, 40 Fed.Reg. 33406, 33407 (1975).

*ed,* D.C.Code 1975 Supp., § 5–103 *et seq.* As such, it is required to comply with regulations concerning tenant grievance procedures promulgated by HUD pursuant to the Housing Act. *Housing Authority of the City of Omaha v. United States Housing Authority,* 468 F.2d 1 (8th Cir. 1972), *cert. denied,* 410 U.S. 927, 93 S.Ct. 1360, 35 L.Ed.2d 588 (1973); *Braxton v. Poughkeepsie Housing Authority,* 382 F.Supp. 992 (S.D.N.Y.1974). *See also Thorpe v. Housing Authority of the City of Durham,* 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969). At the time of the trial court's decision in this case, neither HUD · nor NCHA regulations prescribing grievance procedures, including an administrative hearing, specifically provided for use of the grievance mechanism by family members who resided in a public housing unit but who technically were not "tenants" because they had not signed the lease for the unit.[8] However, since the issuance of the order on appeal, HUD has promulgated new regulations which require a public housing authority to grant "any lessee or the remaining head of the household of any tenant family" an opportunity for a pre-eviction hearing. Grievance Procedures and Requirements, 40 Fed.Reg. 33406, 33407 (Aug. 7, 1975), *amending* 24 C.F.R. § 866.53(f) (1975). Thus, under current regulations appellant, as the remaining head of a tenant household, would be entitled to invoke NCHA grievance procedures, including provisions for a pre-eviction hearing.

▬▬▬ In a similar situation involving HUD regulations promulgated during the pendency of an appeal, the Supreme Court determined that as a general rule, an appellate court must apply the federal administrative regulations in effect at the time it renders its decision. *See Thorpe v. Housing Authority of the City of Durham, supra* at 281, 89 S.Ct. at 526. Accordingly, the Court remanded the case to the public housing authority for application of the new procedural requirements. Those requirements were set forth in a 1969 HUD Circular which is the precursor of the regulations at issue in this case. Subsequent changes in the procedural requirements have been uniformly applied to eviction proceedings commenced prior to their issuance by both state and federal courts. *See, e. g., Glover v. Housing Authority of the City of Bessemer,* 444 F.2d 158 (5th Cir. 1971); *Chicago Housing Authority v. Harris,* 49 Ill.2d 274, 275 N.E.2d 353 (1971); *Housing Authority of the City of Milwaukee v. Mosby,* 53 Wis.2d 275, 192 N.W.2d 913 (1972). Since we are aware of no special circumstances in this case requiring departure from the general rule enunciated in *Thorpe,*[9] we conclude that the current regulations are applicable and require remand of this case to the housing authority for a fair hearing.[10]

---

8. *See* Grievance Procedures in Low-Rent Public Housing Projects, HUD Circular RHM 7465.9 (Feb. 22, 1971); National Capital Housing Authority Grievance Procedures for Tenants and Applicants, NCHA Manual Statement of Policies Section XI, *as amended* by NCHA Order 72–3 (March 30, 1972).

9. Exceptions to the general rule may be made "to prevent manifest injustice." *Thorpe v. Housing Authority of the City of Durham, supra* 393 U.S. at 282, 89 S.Ct. 518.

10. We note that since oral argument, NCHA has amended its grievance procedures to incorporate the current HUD requirements.

*See* 22 D.C.Reg. 4921 (March 15, 1976). NCHA has, however, neglected to revise its definition of "tenant" to include the "remaining head of the household of any tenant family" as required by § 866.53(f) of the federal regulations. *See id.* at 4922. Corporation Counsel conceded at oral argument that the federal standards prescribing the procedural rights of public housing residents are mandatory. *See Thorpe v. Housing Authority of the City of Durham, supra; Housing Authority of the City of Omaha v. United States Housing Authority, supra.* Therefore, appellant must be considered a tenant within the meaning of the NCHA amended regulations, and as such, he is entitled to invoke current NCHA tenant grievance procedures.

In addition to asserting his procedural rights, appellant contends that as a resident of public housing, he has a statutory and constitutional right to continued occupancy of the public housing unit and may not be arbitrarily evicted solely because he was not a signatory to the lease. Although appellant presented this argument to the trial court in his cross-motion for summary judgment, appellees in their motion for summary judgment and the trial court in its initial order addressed only procedural issues concerning the question of whether a pre-eviction hearing was required.[11] After appellant filed a motion to amend the judgment, urging consideration of his substantive claims, the trial court issued a second order declining to grant declaratory relief with respect to the substantive issues because appellant's claims could be asserted as a defense in a suit instituted by appellees for possession of the leased premises.

■ For different reasons, we conclude that a determination of appellant's right to remain in public housing accommodations would be premature at this time. *See Thorpe v. Housing Authority of the City of Durham, supra* at 284, 89 S.Ct. at 527. First, the record does not clearly show that NCHA sought to evict appellant because he had not signed a lease. Rather we are left in doubt as to the actual reasons for the termination notices.[12] These reasons will come to light in the grievance proceedings. The hearing will also disclose whether there is any cause to evict other than the fact that the family members who originally signed the lease are now deceased.[13]

Even were we inclined to decide this matter before a controversy has been clearly established, we would be unable to do so on this appeal. Appellant's argument that he has a protected interest in continued occupancy of public housing finds considerable support in numerous cases holding that tenants of federally funded housing projects have a right or entitlement to continued occupancy under the United States Housing Act and related federal statutes or under the due process clause and may not be evicted at the expiration of a lease term without good cause. *See, e. g., Lopez v. Henry Phipps Plaza South, Inc.*, 498 F.2d 937 (2d Cir. 1974); *Joy v. Daniels*, 479 F.2d 1236 (4th Cir. 1973); *Anderson v. Denny*, 365 F.Supp. 1254 (W. D.Va.1973); *McQueen v. Druker*, 317 F. Supp. 1122 (D.Mass.1970), *aff'd on other grounds*, 438 F.2d 781 (1st Cir. 1971); *Green v. Copperstone Limited Partnership*, 28 Md.App. 498, 346 A.2d 686 (1975); *Ap-*

11. Appellant initially sought injunctive and declaratory relief. The parties apparently agreed to proceed on cross-motions for summary judgment, however, the record indicates that there was some confusion on the issues to be resolved in the summary judgment proceeding. Thus, only appellant addressed the substantive issues raised in the complaint.

12. The record establishes only that appellant was denied the opportunity for a hearing because he had not signed a lease. On appeal, Corporation Counsel asserts, for the first time, that NCHA has a policy of terminating the occupancy rights of adult surviving members of a deceased tenant's family. This policy apparently does not extend to "a surviving spouse or a large number of children." We do not know what the rationale is for making a distinction between surviving spouses and middle-aged or elderly disabled persons. In any event, the record does not disclose what policies or regulations prompted the notice of termination, and "we cannot 'accept appellate counsel's *post hoc* rationalizations for agency action' . . . ." *Federal Power Commission v. Texaco, Inc.*, 417 U.S. 380, 397, 94 S.Ct. 2315, 2326, 41 L.Ed.2d 141 (1974), quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168–69, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962); *Securities and Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 196, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947).

13. We also note that should NCHA determine that there is not good cause to evict appellant and his sister, it may enter into a new lease agreement with them, in which case a consideration of appellant's substantive claims will be unnecessary. We will not decide a contingent question in advance of the necessity for its decision. *See Thorpe v. Housing Authority of the City of Durham, supra*, 393 U.S. at 284, 89 S.Ct. at 527.

*pel v. Beyer,* 39 Cal.App.3d Supp. 7, 114 Cal.Rptr. 336 (1974).[14] In those cases, the courts generally analyzed three factors in determining the rights to be accorded public housing residents: the applicable statutes, governmental regulations, and the custom and policy of the public landlords. *See Joy v. Daniels, supra* at 1240. In this case, it is clear that the applicable statute, the United States Housing Act, was intended to benefit low income families,[15] and therefore it implies that entire families residing in public housing, rather than merely individual tenants, have a right to be free from arbitrary eviction.

However, a determination of the extent of a public housing resident's interest also depends in part on the customs and policies of the public landlord which may have cre-

ated an expectation that government benefits would continue. *See Joy v. Daniels, supra* at 1241–42; *Owens v. Housing Authority of the City of Stamford,* 394 F. Supp. 1267, 1272 (D.Conn.1975); *Bloodworth v. Oxford Village Townhouses, Inc.,* 377 F.Supp. 709, 716–17 (N.D.Ga.1974); *Anderson v. Denny, supra* at 1260. The record in this case does not apprise us of NCHA's customary practices and procedures, if any, in the event of a tenant's death,[16] nor of the federal and local regulations, policies, and practices controlling the selection of applicants for public housing units. Without a full factual development of these matters, a decision on appellant's substantive claims would be inappropriate.

The judgment of the trial court is

*Reversed.*

---

14. *See also Caramico v. Secretary of the Department of Housing and Urban Development,* 509 F.2d 694 (2d Cir. 1974); *Bloodworth v. Oxford Village Townhouses, Inc.,* 377 F.Supp. 709 (N.D.Ga.1974); *Manners v. Secretary of Housing and Urban Development,* 333 F. Supp. 829 (E.D.N.Y.1971).

15. The express purpose of the Act is "to remedy the unsafe and insanitary housing conditions and the acute shortage of decent,

safe, and sanitary dwellings for *families* of low income . . . ." [Emphasis supplied.] 42 U.S.C. § 1401 (1970). In determining eligibility for low-rent housing under the Act, the income of the entire family is taken into consideration, as well as "family size, composition, age, physical handicaps, and other factors which might affect the rent-paying ability of the family." *Id.* at § 1402.

16. *See* note 12 *supra.*