DISTRICT OF COLUMBIA, Petitioner,

v.

The Honorable Natalia M. Combs
GREENE, et al., Respondents.

Verizon South, Inc., Petitioner,

v.

District of Columbia Contract Appeals
Board, Respondent.

District of Columbia, Appellant,

v.

Verizon South, Inc., Appellee.

Nos. 02–SP–801, 02–AA–865, 02–CV–884.

District of Columbia Court of Appeals.

Argued Aug. 16, 2002.
Decided Sept. 5, 2002.

Michael F. Wasserman, Assistant Corporation Counsel, with whom Robert R. Rigsby, Corporation Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corporation Counsel, were on the brief, for the District of Columbia.

David P. Whittlesey, with whom Steven M. Zager, Austin, TX, was on the brief, and Natalie O. Ludaway and Rebecca L. Taylor, Washington, DC, Of Counsel, for Verizon South, Inc.

Before FARRELL and RUIZ, Associate Judges, and NEBEKER, Senior Judge.

PER CURIAM.

The District of Columbia and Verizon South, Inc.[1] have a dispute arising out of a contract for services entered into in 1999 in anticipation of computer-generated problems resulting from the Y2K bug. The District claims that Verizon South did not fully perform and Verizon South claims that the District still owes $2 million. The substance of their contract claims has not been finally decided, however, because of a preliminary disagreement over the proper forum to resolve the contract dispute. In short, Verizon South claims that the parties agreed to submit their contract disputes to arbitration and the District contends it did not so agree because it could not.[2] We tend strongly to agree with the District that the proper forum to resolve the question of whether there is an agreement to arbitrate is, in the first instance, the Contract Appeals Board, with recourse to this court, and, further, that the District is likely to succeed on the question of arbitrability. Thus we enjoin the parties from proceeding to arbitration so that we may preserve our jurisdiction to finally decide the issue.

The procedural history of this case reflects a fast and furious pace of filings and counter-filings in different fora: the Superior Court, the American Arbitration Association, and the Contract Appeals Board (CAB). As a result, we have several pending matters for resolution: the District's petition for mandamus directed to the Superior Court judge who ordered the parties to arbitration; the District's appeal from the Superior Court's denial of its motion to alter or amend the order compelling arbitration on the ground that the Superior Court lacked jurisdiction; Verizon South's petition for review of the

1. We refer to Verizon South for convenience. The contract was with GTE South Incorporated, and the District disputes that Verizon South is a successor in interest because it did not "seek to enter into a change of name agreement or novation as required by law."

2. We granted an interim stay of the order to arbitrate pending our decision on the parties' various submissions.

CAB's decision that it has primary jurisdiction over the matter and the District's request that we enjoin the parties from proceeding to arbitrate. We need not involve ourselves in the procedural complexities of our review of the Superior Court's order as we treat the matter as if it were an original request by the District for injunctive relief.[3] In granting that request, we necessarily determine that Verizon South's petition for review of the CAB's interlocutory decision asserting jurisdiction is premature as it is not "plainly in excess of its delegated powers." *Bender v. District of Columbia Dep't of Employment Servs.*, 562 A.2d 1205, 1209 (D.C.1989).

### The All Writs Act

■ "The All Writs Act provides that 'all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.' " *District of Columbia v. Group Ins. Admin.*, 633 A.2d 2, 14 (D.C.1993) (quoting 28 U.S.C. § 1651(a) (1988)). The Act "does not constitute a concurrent basis for original jurisdiction" and is "designed to grant relief in extraordinary circumstances." *District of Columbia v. L.G. Indus.*, 758 A.2d 950, 955 (D.C.2000). As the Supreme Court has observed:

> decisions of this Court "have recognized a limited judicial power to preserve the court's jurisdiction or maintain the *status quo* by injunction pending review of an agency's action through the prescribed statutory channels.... Such power has been deemed merely incidental to the courts' jurisdiction to review final agency action...."

*FTC v. Dean Foods Co.*, 384 U.S. 597, 604, 86 S.Ct. 1738, 16 L.Ed.2d 802 (1966) (quoting *Arrow Transp. Co. v. Southern Ry. Co.*, 372 U.S. 658, 671 n. 22, 83 S.Ct. 984, 10 L.Ed.2d 52 (1963)). We also have recognized this power to issue preliminary injunctions under the All Writs Act in order to preserve our appellate jurisdiction pending the completion of administrative review, *see Capitol Hill Hosp. v. District of Columbia State Health Planning & Dev. Agency*, 600 A.2d 793, 799 (D.C.1991), and in the Superior Court to preserve its jurisdiction to review the CAB's final decision in a bid protest, *see Group Ins. Admin.*, 633 A.2d at 15. In this case, there is no question that our appellate jurisdiction is implicated in the ultimate resolution of the issues of 1) the jurisdiction of the CAB to decide, in the first instance, the arbitrability of contract disputes under the District of Columbia Procurement Practices Act, D.C.Code § 2–301.01 *et seq.* (2001) (PPA), and 2) whether such contract disputes are arbitrable. *See* D.C.Code § 2–309.05 (vesting D.C. Court of Appeals with exclusive jurisdiction to review decisions of CAB on claims arising from government contracts) and D.C.Code § 11–722 (2001) (vesting exclusive jurisdiction in D.C. Court of Appeals to decide "contested cases").

■ In determining whether to exercise our power of injunction under the All Writs Act, an extraordinary remedy, we consider whether the moving party, in this case the District, has "clearly demonstrated"

> (1) that there is a substantial likelihood [it] will prevail on the merits; (2) that [it] is in danger of suffering irreparable harm during the pendency of the action; (3) that more harm will result to [it] from the denial of the injunction than will result [to Verizon South] from its

---

**3.** To the extent the trial court's order is inconsistent with our reasoning for enjoining the parties from proceeding with arbitration at this time, we are confident that the trial court will vacate the order compelling arbitration without issuance of a formal writ.

grant; and, in appropriate cases, (4) that the public interest will not be disserved by the issuance of the requested order. *Group Ins. Admin.*, 633 A.2d at 21 (quoting *Wieck v. Sterenbuch*, 350 A.2d 384, 387 (D.C.1976)).

### 1. Likelihood that the District will succeed on the merits

■ The District argues in effect that it never agreed to arbitrate disputes arising under the contract with Verizon South, because the PPA vests sole authority to hear such disputes in the CAB, and under well-settled agency principles, the District cannot be bound by the *ultra vires* act of a contracting officer purporting to agree to arbitration. Verizon South responds, first, that nothing in the PPA prohibits the District from agreeing to submit contract disagreements to arbitration; and second, that if the statute indeed precludes that means of dispute resolution, the Federal Arbitration Act (FAA) preempts the local statute by generally barring states from interfering with the execution of private arbitration agreements. With respect to both parts of Verizon South's argument, we conclude that the District is substantially likely to prevail on the merits.

### A. The Statute

As the District points out, the PPA could scarcely be plainer in establishing the CAB as the exclusive hearing tribunal for determination of government contract disputes of the kind underlying this controversy. D.C.Code § 2–308.03(a)(1) states that, in the first instance, "[a]ll claims by the District government against a contractor arising under or relating to a contract shall be decided by the contracting officer...." In like fashion, § 2–308.05(a) provides that "[a]ll claims by a contractor against the District government arising under or relating to a contract shall

be ... submitted to the contracting officer for a decision." In § 2–309.03(a), the statute goes on to declare that "[t]he [Contract Appeals] Board shall be the exclusive hearing tribunal for, and shall have jurisdiction to review and determine de novo: ... (2) Any appeal by a contractor from a final decision by the contracting officer on a claim by a contractor, when such claim arises under or relates to a contract; and (3) Any claim by the District against a contractor, when such claim arises under or relates to a contract."

Verizon South's claim that it has fully performed under the contract and that the District is in breach of the agreement by having withheld partial payment undeniably constitutes a "claim ... relating to [the] contract." Although the statute does not define a claim, the CAB has promulgated a rule defining "claim" to mean "a written demand or written assertion by the District or a contractor seeking ... the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or related to the contract." 27 DCMR § 3899, 35 D.C.Reg. 1713 (Feb. 26, 1988). Verizon South does not dispute that its written demand for payment meets this definition. It argues, nevertheless, that the statute is silent on whether the District in contracting may agree to arbitration. But that argument is difficult, if not impossible, to square with the language of § 2–309.03(a) making the CAB "the exclusive hearing tribunal" for claims of the enumerated kind. *See, e.g.*, BLACK'S LAW DICTIONARY 506 (5th ed.1979) (defining "exclusive" to mean "sole," as where authority is "vested in one person [or body] alone").

■ The Superior Court judge read the statute as limiting the CAB's exclusive jurisdiction to "appeals by *contractors* from an adverse ruling of a contracting officer" (emphasis added), noting that there had as

yet been no such ruling adverse to Verizon South.[4] This conclusion, however, appears to confuse the issue of who may appeal from a contracting officer's decision[5] with the scope of the Board's authority to adjudicate claims. As we have seen, the CAB's jurisdiction as the hearing tribunal is "exclusive" regarding both contractor appeals from a contracting officer's decision *and* "[a]ny claim by the District against a contractor, when such claim arises under or relates to a contract." Regardless of which party brings a claim before it, by appeal or otherwise, the Board's jurisdiction to hear such claims appears exclusive—to the exclusion of any other forum such as arbitration.

## B. Federal Preemption

■ Alternatively, Verizon South argues that if the PPA makes the Board the exclusive forum to hear District government contract disputes such as this one, the statute runs afoul of the Supremacy Clause, U.S. CONST. art. VI, by blocking arbitration in violation of the FAA. Verizon South relies on a body of Supreme Court law that has interpreted § 2 of the FAA as a congressional command in favor of enforcement of arbitration agreements, limited only as the section itself provides.[6] *See, e.g., Southland Corp. v. Keating,* 465 U.S. 1, 10, 104 S.Ct. 852, 79 L.Ed.2d 1

(1984) ("In enacting § 2 of the federal Act, Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration."); *id.* at 11, 104 S.Ct. 852 ("the broad principle of enforceability is [not] subject to any additional limitations under state law" other than those set forth in § 2). Verizon South's preemption argument, in our view, is wholly unlikely to prevail on the merits.

What its argument does is to mistake the authority of a state to bar enforcement of otherwise valid arbitration agreements—a power denied the state except insofar as § 2 permits—for the authority of a government contracting for goods or services in its own behalf to refuse to agree to arbitrate disputes. Most recently, the Supreme Court has stated in this regard:

> The FAA directs courts to place arbitration agreements on equal footing with other contracts, *but it does not require parties to arbitrate when they have not agreed to do so.* The purpose of Congress in [enacting the FAA] was to make arbitration agreements as enforceable as other contracts, but not more so.

*EEOC v. Waffle House,* 534 U.S. 279, 122 S.Ct. 754, 764, 151 L.Ed.2d 755 (2002)

4. Since the trial court's ruling, the contracting officer has ruled that the arbitration clause was unenforceable because it was not authorized by District law and that Verizon South breached its obligations under the contract, awarding the District nearly $2.5 million in damages.

5. D.C.Code § 2–308.03(b) provides that "[t]he decision of the contracting officer shall be final and not subject to review unless an administrative appeal or action for judicial review is timely commenced as authorized by § 2–309.04." That section, in turn, authorizes an appeal by the contractor from the contracting officer's decision, § 2–309.04(a),

but—except in the case of "small claims"—does not mention an appeal by the District of Columbia.

6. As relevant here, § 2 of the FAA provides:

> A written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (2000).

(citations, internal quotation marks, and brackets omitted; emphasis added); *see also Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 219, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985) ("The Act ... does not mandate the arbitration of all claims, but merely the enforcement—upon the motion of one of the parties—of privately negotiated arbitration agreements.").

The PPA specifies the manner in which the District government may contract to procure property, supplies, services, and construction, *see* D.C.Code § 2–301.01, as well as the manner by which disputes arising under such contracts are to be resolved. By its terms, as we have seen, it makes the CAB the sole hearing tribunal for resolution of those disputes. In effect, then, the statute withholds from the District's contracting officers the power to agree to arbitration (or, for that matter, to agree to any form of dispute resolution other than administrative), just as any private corporation or individual may refuse to arbitrate. It is a basic principle of District law that a contracting official cannot obligate the District to a contract in excess of his or her actual authority. *See Coffin v. District of Columbia,* 320 A.2d 301, 303 (D.C.1974).[7] Likewise, a person making or seeking to make a contract with the District is charged with knowledge of the limits of the agency's (or its agent's) actual authority. *See Chamberlain v. Barry,* 606 A.2d 156, 159 (D.C. 1992). In asserting its reliance on the action of the contracting officer in this case, Verizon South makes what amounts to a claim of estoppel against the District,[8] but as we stated most recently in rejecting such a claim, a party contracting with the government is "on constructive notice of the limits of the [government agent's] authority," and cannot reasonably rely on representations to the contrary. *Leonard v. District of Columbia,* 801 A.2d 82, 86 (D.C.2002).

Section 2 of the FAA prohibits courts from "invalidat[ing] arbitration agreements under state laws applicable *only* to arbitration provisions." *Doctor's Assocs., Inc. v. Casarotto,* 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996). State laws may not, in other words, "singl[e] out arbitration provisions for suspect status...." *Id.* The PPA does nothing of that sort; instead it precludes government contracting officers from even entering into such agreements, any more than, for example, they may agree to allow contract-related disputes to be litigated in Superior Court. *See W.M. Schlosser Co. v. School Bd. of Fairfax County,* 980 F.2d 253, 259 (4th Cir.1992) (Virginia's "Dillon Rule" prohibiting by implication enforcement of an arbitration agreement entered into by local school board does *not violate* § 2 of FAA because "[i]t is a rule of general applicability that defines and invalidates all *ultra vires* acts of local governing bodies."). The decision of the District's legislature to centralize dispute resolution regarding government contracts in an administrative forum, fol-

---

7. The general rule is well settled and is constantly enforced that one who makes a contract with a municipal corporation is bound to take notice of limitations on its power to contract and also of the power of the particular officer or agency to make the contract. That is, persons dealing with a municipal corporation through its agent are bound to know the nature and extent of the agent's authority in accordance with long-existing and well-settled general rules obtaining in the law of agency generally, and applying to

dealings with both artificial and natural persons.

*Coffin,* 320 A.2d at 303 (quoting 10 McQuillin, Municipal Corporations § 29.04, at 219–22 (3d ed.1966)).

8. That "equitable estoppel will not lie against the Government as against private litigants" is well established. *Office of Personnel Management v. Richmond,* 496 U.S. 414, 419, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990).

lowed by review in this court upon request, is therefore untouched by the FAA's general command that private arbitration agreements be enforced. At the very least, the District is likely to prevail on the merits of this issue.

## 2. Irreparable Harm to the District

 Although the primary reason for granting a preliminary injunction is to prevent irreparable harm, this factor is less decisive where the likelihood of success on the merits is very strong, as we perceive it to be here. *See Virginia Petroleum Jobbers Ass'n v. Federal Power Comm'n*, 104 U.S.App. D.C. 106, 110, 259 F.2d 921, 925 (1958). The District identifies two distinct harms that will result from private arbitration. First is the unnecessary and additional expense of arbitration and delay of the inevitable proceeding before the CAB. Second is that private dispute resolution in a "closed conference room in Austin" of a public contract is contrary to the intent of the legislature, as clearly expressed in the PPA. The harms the District asserts are made more in its role as a governmental entity than as party to the disputed contract. Though neither of these harms might be sufficient to justify extraordinary relief in another case, we think that here, where we expect that a CAB proceeding will be required for the reasons outlined above, these harms justify the injunction. A party's monetary loss is not usually considered sufficient to justify equitable relief, *see Group Ins. Admin.*, 633 A.2d at 23 (citing *Wisconsin Gas Co. v. FERC*, 244 U.S.App. D.C. 349, 354, 758 F.2d 669, 674 (1985)), but the unnecessary expenditure of public moneys that will not be recoverable should be avoided. Similarly, although an eventual hearing before the CAB is not necessarily foreclosed by an initial arbitration, there is a possibility that the proceeding before the CAB we think the statute mandates will never take place if, as the District posits, as a party to

the contract it were to be satisfied with the arbitrator's award, and never bring the issue for CAB or judicial review. *See also New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351, 98 S.Ct. 359, 54 L.Ed.2d 439 (1977) ("[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury.").

## 3. Balance of Harms

 Before awarding injunctive relief, we must determine that *"more* harm will result to the movant from the denial of the injunction than will result to the non-moving part[y] from its grant." *Group Ins. Admin.*, 633 A.2d at 23. Balanced against the District's asserted harms, the harm to Verizon South is less. The only harm to Verizon South from our enjoining the arbitration and having to proceed before the CAB will come to pass only if the arbitration clause in the contract is eventually determined to be enforceable. In that event, Verizon South will have suffered delay in securing the arbitration it had contracted for. Delay, however, is not preclusion. Moreover, as already discussed, although we do not foreclose (pending receipt of the CAB's final opinion on the matter) the possibility that the contract dispute may be arbitrable, based on our analysis and the CAB's preliminary decision on the subject, we have little reason to think that will be the outcome. Therefore, we discount the possible harm to Verizon South.

## 4. The Public Interest

 The primary purpose for issuing the injunction under the All Writs Act, as we have noted, is to preserve our appellate jurisdiction. Were the contract dispute to be arbitrated in Texas, as Verizon South has sought to enforce, there is no assurance that the questions of jurisdiction and arbitrability would be presented to us for

ultimate resolution, after consideration of the CAB's view on the matter, in the manner laid out by the legislature.[9] Moreover, these questions arise primarily under District of Columbia law-matters as to which this is the authoritative forum. A decision resulting from our interpretation of District of Columbia law and its possible pre-emption by the Federal Arbitration Act is properly appealable to the United States Supreme Court. The public interest, therefore, weighs in favor of injunction.

Considering the above factors, we exercise our authority under the All Writs Act to enjoin the parties from arbitrating the contract dispute until the matter has been resolved by the CAB, with an opportunity to petition for review by this court.

*So ordered.*

---

9. At oral argument, Verizon South offered to forego other available courts and to commit *itself* to bringing any action to review or confirm an award in this jurisdiction. The District refused to accept such a stipulation and has questioned its enforceability, citing cases in a post-argument submission. We do not doubt the sincerity of the offer made by Verizon South's counsel. In view of our strong sense of the District's likelihood of success on the merits, however, there is little reason to rely on such an indirect procedure where an injunction will preserve our jurisdiction in a straightforward manner.