**DISTRICT OF COLUMBIA et al. v. CAHILL.**
No. 5167.

Court of Appeals of District of Columbia.
Argued Oct. 8, 1931.
Decided Nov. 30, 1931.

W. W. Bride and F. H. Stephens, both of Washington, D. C., for appellants.

Daniel W. O'Donoghue and Frederick Stohlman, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

MARTIN, Chief Justice.

An appeal from a decree permanently enjoining the District of Columbia from canceling or revoking a certain certificate issued to appellee by the inspector of buildings of the District of Columbia permitting the use and occupancy as a garage of the building known as 1615 and 1617 O Street Northwest, in the city of Washington, D. C.

The building in question is a two-story brick structure extending from O street to a public alley in the rear, with double door entrances at front and rear; the first floor designed for use for storage and similar purposes, and the second floor for living apartments. The building was erected in 1911, and is in a residence district of the city. The record does not disclose that a permit was ever issued to the owner for the use of any part of the premises as a garage; nevertheless it appears that from 1911 and continuously thereafter the first floor of the building was openly and publicly used by successive tenants for storage and garage purposes. Nor does it appear that any objection was ever made either by the District of Columbia or any resident thereof against the use of the first floor for such purposes.

In March, 1926, the appellee purchased the property, with the purpose of improving the building and renting the first floor as a garage. He applied to the inspector of buildings of the District of Columbia for a permit to fireproof and repair the premises, and also for a certificate of occupancy of the first floor for use as a garage. The inspector of buildings after making an investigation decided that although the building was located within a residence district, it nevertheless had been put to lawful use as a garage prior to and at the time of the enactment of the Zoning Act of March 1, 1920, and that such use might, by the express provision of section 6 of the act, be continued, although not conformable with the present zoning regulations. 41 Stat. 500, § 6. Accordingly on June 8, 1926, a permit to use the first floor of the building as a garage was issued by the inspector of buildings to appellee, and at the same time the inspector approved of the plans submitted to him by appellee upon blue prints for the repair and improvement of the building. Appellee thereupon expended approximately $6,000 in the execution of such repairs and improvements, designed for the use of the first floor as a garage, but without structural alteration of the building. This expenditure added little or nothing to the value of the premises for any other than garage purposes. Appellee also expended about $135, in providing a drainage outlet for the garage, upon an order of the inspector of plumbing of the District of Columbia. These repairs were publicly carried on, in full view of the neighborhood, and no objection was then made concerning them on behalf of the District or any of its residents.

Appellee thereupon leased the first floor of the building as a garage to tenants for a

5-year term, and the inspector of buildings issued to them occupancy permits for such use.

Afterwards, to wit on January 31, 1927, the board of commissioners of the District of Columbia, acting upon a protest filed on December 31, 1926, by adjacent property owners, and upon a hearing and report of the inspector of buildings and the assistant corporation counsel, notified appellee that the certificates of occupancy theretofore issued to appellee and his lessees were issued under "a mistake of fact," and should be canceled and revoked, inasmuch as it had been found that the use of the lower floor of the building as a garage prior to the enactment of the Zoning Act of March 1, 1920, was unlawful, "for the reason that no permit to so use the building was ever obtained until the issuance of the occupancy permit here in question." The commissioners stated furthermore that an order would be issued instructing the inspector of buildings to revoke the occupancy permit to maintain the garage in question. Whereupon appellee brought this suit in the lower court to enjoin such revocation, and a permanent injunction was issued by that court as prayed in the bill.

We agree with the decision of the lower court.

Under section 6 of the Zoning Act of March 1, 1920, supra, appellee was lawfully entitled to the permit and certificates in question, if, at the time of the passage of the act, the first floor of the building was in lawful use as a garage, although such use did not conform with the provisions of the act or of the orders and regulations adopted under it. When appellee in good faith presented his application to the inspector of buildings, it became the duty of that officer to ascertain whether the facts justified the granting thereof. See Building Code of the District of Columbia, section II, part 1, A. The inspector made an investigation and decided that the application should be granted; he accordingly issued the permit and certificates in due form to appellee and lessees, and nothing appears in the record to show that this duty was not correctly and honestly performed. Reposing confidence in these official acts of the inspector of buildings, the appellee was induced to expend a large sum of money upon the building, and to enter into the several 5-year leases of the premises for garage purposes. Neither appellee nor the lessees would have entered into such leases except for the official permits and certificates issued as aforesaid.

It follows from these facts and circumstances that the District of Columbia is estopped from revoking the certificates of occupancy for garage purposes here in question. The District is acting in this matter as a municipal corporation in relation to strictly corporate affairs, and, where the essential elements of an estoppel are present, it may be estopped by its acts and conduct in like manner and under similar circumstances as in the case of estoppels against individuals. 21 C. J. 1189.

"It has frequently been decided that the doctrine of estoppel in pais is applicable to municipal corporations, but that they will be estopped, or not, as justice and right may require. There may be cases where, under all the circumstances, to assert a public right would be to encourage and promote a fraud. Where a party acting in good faith under affirmative acts of a city has made such expensive and permanent improvement that it would be highly inequitable and unjust to destroy the rights acquired, the doctrine of equitable estoppel will be applied." People v. Rock Island, 215 Ill. 488–495, 74 N. E. 437, 440, 106 Am. St. Rep. 179.

"But although the courts of Illinois do not permit rights to be acquired in city streets and public places by mere adverse possession, yet they have frequently held that the doctrine of estoppel in pais is applicable to municipal corporations, and that they will be estopped or not as justice and right may require; that there may be cases where, under all the circumstances, to assert a public right would be to encourage and promote a fraud, as where a party acting in good faith under affirmative acts of the city has made such expensive and permanent improvements that it would be highly inequitable and unjust to destroy the rights acquired. Under such circumstances the doctrine of equitable estoppel will be applied. The court does not consider that there is either danger to the public or injustice in the application of the doctrine of estoppel under such circumstances. In the exercise of proper diligence the public authorities may prevent encroachments upon public streets, and if they do not, any citizen may take the necessary steps to do so; and if there is not only a failure to act by either, but affirmative action with the apparent approval of every one interested, and the situation is changed by permanent improvements being made, the principles of equity require that the public should be estopped." Dillon (5th Ed.) vol. 3, par. 1191. See Hagerstown v. R. Co., 123 Md. 183, 196,

91 A. 170, Ann. Cas. 1916B, 1267, 7 A. L. R. 1239.

In our opinion, the instant case is one where, under all the circumstances to assert a supposed public right would be to encourage and promote a wrong, whereby a party acting in good faith under affirmative acts of a municipal corporation, and making expensive and permanent improvements in reliance thereon, would unjustly and inequitably be deprived of the rights which the corporation had granted to him.

The decree of the lower court is therefore affirmed.