SHERIDAN–KALORAMA NEIGHBOR-
HOOD COUNCIL and Philip R.
Melkye, Petitioners,

v.

DISTRICT OF COLUMBIA BOARD OF
ZONING ADJUSTMENT, Respondent,

Grand Duchy of Luxembourg, Paul F. In-
terdonato, Theodore E. Lombard, James
T. Reilly, and Robert F. Comstock, In-
tervenors.

No. 12899.

District of Columbia Court of Appeals.

Argued Oct. 17, 1978.

Decided May 7, 1979.

Rehearing En Banc Denied Dec. 24, 1979.

C. Coleman Bird, Washington, D. C., with
whom Barbara B. Price, Washington, D. C.,
was on brief, for petitioners.

Richard W. Barton, Deputy Corp. Coun-
sel, and Leo N. Gorman, Asst. Corp. Coun-
sel, Washington, D. C., entered appearances
for respondent. (Respondent adopted the
brief of intervenors.)

Whayne S. Quin, Washington, D. C., with
whom Norman M. Glasgow and Iverson O.
Mitchell, III, Washington, D. C., were on
the brief, for intervenors.

Before KELLY, GALLAGHER and
HARRIS, Associate Judges.

HARRIS, Associate Judge:

Petitioners seek to overturn an order of
the Board of Zoning Adjustment granting
an application for a special exception to
permit the conversion of a chancery into
law offices and apartments. We reverse.

I

The Grand Duchy of Luxembourg is the
owner of a four-story building located at
2210 Massachusetts Avenue, N.W., which it
had used as a chancery and residence since
1961. Four lawyers (the individual interve-
nors herein) contracted to buy the property
in order to convert it to a combination of
law offices and four one-bedroom apart-
ments. To effect such a conversion, how-
ever, a certificate of occupancy was re-
quired for the new use. The law firm's
request for such a certificate was denied.
The Chief of the Zoning Review Branch
informed the firm that because the chan-
cery was located in an R–3 District [row
dwellings, *see* Zoning Regulations of the
District of Columbia § 3103 (1977)], it could
not be used as a commercial unit except by
special exception granted by the Board of
Zoning Adjustment (BZA) pursuant to
§ 7104.2 of the zoning regulations.[1] Ac-

---

1. Article 71 of the zoning regulations pertains
to nonconforming uses and structures. A non-
conforming use is a use of property inconsist-

ent with the zoning district in which it is situat-
ed. Such uses are broken down into Class I
nonconforming uses (land, § 7103.21, and Class

cordingly, on September 8, 1976, Luxembourg applied to the BZA for a special exception.

A hearing on the requested exception was held by the BZA on March 16, 1978. Petitioners (a next door neighbor of the chancery and an association of nearby property owners and residents), as well as various citizens' associations, individual area residents, and representatives of Advisory Neighborhood Commission 1–D, objected to the change in use, asserting that the introduction of a commercial establishment would detrimentally alter the residential character and future development of the neighborhood.[2] Those expressions of opinion were countered in part by an official of the Municipal Planning Office and an architect retained by the applicant, both of whom testified that the proposed use was compatible with the area.

At the outset of the hearing, petitioners moved to dismiss the application on the grounds (1) that the BZA lacked jurisdiction under § 7104.2 of the zoning regulations to grant the exception, and (2) that the conversion would "extend" the existing use in violation of § 7105.2.[3] That motion was held in abeyance by the BZA and ultimately was argued on June 15, 1977.

On September 7, 1977, the BZA, acting in executive session, denied petitioners' motion to dismiss and granted the application. That ruling was followed by an order accompanied by findings of fact and conclu-

sions of law on October 14, 1977. Petitioners' motion for reconsideration or stay of the order pending review was denied. This appeal followed.

## II

Petitioners have launched a concerted attack on the BZA's order, (1) reasserting their contention that the BZA lacked jurisdiction under § 7104.2 to grant the exception, and arguing further that (2) the BZA failed to comply with the exceptions and comment requirements of § 10(d) of the D. C. Administrative Procedure Act, D. C. Code 1973, § 1–1509(d), (3) the BZA failed to give adequate consideration to the recommendations made by ANC 1–D, as required by § 13 of the Advisory Neighborhood Commissions Act, D. C. Code 1978 Supp., § 1–171i(d), and (4) the BZA's findings and conclusions were improper and without substantial support in the record. Because of our disposition of this matter we need address only the first issue.

As noted, petitioner maintains that the BZA was without "jurisdiction" under § 7104.2 to allow the change in use sought by the applicant. However, the question technically is not one of jurisdiction, for the BZA has the authority to entertain applications for exceptions pursuant to D. C. Code 1973, § 5–420, and § 8207.2 of the zoning regulations. Rather, we consider petitioners' argument as an attack on the BZA's interpretation and application of § 7104.2.

---

II nonconforming uses (all others, § 7103.22). Such uses which existed on the effective date of the zoning regulations May 12, 1958) are allowed to be continued, operated, occupied, or maintained. *See* § 7102.1 However, if one desires to change the function of a Class II nonconforming use—as was sought to be done here—the change must be effectuated pursuant to § 7104.2, which provides:

> If approved by the Board of Zoning Adjustment in accordance with the authority and procedures established in Section 7109 of this Article a Class II *nonconforming use* may be changed to a use which is permitted in the most restrictive district in which the existing *nonconforming use* is permitted. [As is true throughout this opinion whenever the zoning regulations are quoted, italicization is in the regulations.]

2. The area surrounding the chancery contains a mix of residential and diplomatic uses. No professional or commercial offices are located in the immediate vicinity.

3. Section 7105.2 provides:

> If approved by the Board of Zoning Adjustment in accordance with the authority and procedures established in Section 7109 of this Article a Class II *nonconforming use* may be extended to other portions of a *structure* devoted to such use, provided no *structural alterations* are made and no other *structure* is involved in the extension of the *nonconforming use.*

Petitioners contend that the law firm's plan to install an elevator would require structural alterations in violation of this section.

Section 7104.2 provides that a nonconforming use (the chancery) may be changed to a use (a law office) which is permitted in the most restrictive district in which the existing nonconforming use is permitted.[4] Petitioners contend that the word "permitted" as used in this section should be given its ordinary and accepted meaning of "allowed", either as a matter of right or by special exception. Therefore, one must look to see what districts chanceries and law offices are allowed in. If law offices are not allowed in the most restrictive district which allows chanceries, then a chancery cannot be converted to a law office.

Generally, the zoning regulations specify what type of use is permitted in each district. Thus, for example, the most restrictive district in which law offices may be located either as a matter of right (§ 4101.-35) or by special exception (§ 4101.42) is the Special Purpose (SP) District. Chanceries, however, have been afforded special treatment. They are covered under both the zoning regulations and statutes. As with law offices, under the regulations chanceries are permitted by right or exception in an SP District. *See* §§ 4101, 4101.35, 4101.-42. D.C. Code 1973, § 5–418(d), also provides in pertinent part:

> After October 13, 1964, a foreign government shall be permitted to construct, alter, repair, convert, or occupy a building for use as a chancery within any district or zone restricted in accordance with this Act to use for medium high density apartments or high density apartments if the Board of Zoning Adjustment shall determine after a public hearing that the proposed use and the building in which the use is to be conducted are compatible with the present and proposed development of the neighborhood.

The zoning districts corresponding to the terms "medium-high density" and "high density" apartments as used in the statute are the R–5–C and R–5–D (general residence) Districts, respectively. *See* § 3105 of the zoning regulations. Thus, unlike law offices, chanceries are allowed by special exception under the statute in R–5–C and R–5–D Districts. These latter districts are more restrictive than an SP District, the most restrictive district in which a law office may be located. *See* footnote 4, *supra.* Therefore, under petitioners' interpretation of § 7104.2, a chancery may not be changed into a law office.

■ Intervenors and the BZA agree that § 5–418 of the Code is a special exception provision to be read into the zoning regulations, and that law offices and chanceries are first permitted as of right in an SP District. There their agreement with petitioners ends. The crux of their disagreement—and the key to this case—is the interpretation of the word "permitted" as used in § 7104.2. The BZA found in its order, and it is argued here, that "permitted" means "permitted as of right," not also "permitted by special exception." Therefore, it is contended, since the most restrictive district in which law offices are permitted as a matter of right is also the most restrictive district in which chanceries are permitted as a matter of right—an SP District—the chancery may be converted into law office use and meet the requirements of § 7104.2. We disagree.

■ It is an established maxim of review that an agency's interpretation of its administrative regulations is to be given great deference and to be upheld unless clearly erroneous or inconsistent with the regulations.[5] *See, e. g., Udall v. Tallman*, 380 U.S. 1, 16–17, 85 S.Ct. 792, 801–802, 13 L.Ed.2d

---

4. The relative restrictiveness of zoning districts is set forth in § 7103.1 of the zoning regulations, which provides:

> For the purpose of this Article, the *districts* established by these regulations are listed in the following order of decreasing use restriction: R–1–A, R–1–B, R–2, R–3, R–4, R–5–A, R–5–B, R–5–C, R–5–D, SP, C–1, C–2–A, C–2–B, C–3–A, C–4, W–1, W–2, W–3, CR, C–M–1, C–M–2, C–M–3, M.

Thus, the R–1–A District is the most restrictive and the M District the least restrictive.

5. We note, however, that the zoning regulations are promulgated by the Zoning Commission, rather than by the BZA. *See Dietrich v. BZA*, D.C.App., 320 A.2d 282, 288 (1974) (Harris, J., dissenting).

616 (1965); *Barber v. District of Columbia Dept. of Human Resources,* D.C.App., 361 A.2d 194, 198 (1976). Here we conclude that the BZA's interpretation of the word "permitted" is manifestly inconsistent with the use of that word as employed throughout the zoning regulations, and is clearly erroneous.

Invoking the rule of construction that where a word is used in different sections of a regulatory scheme it should be consistently construed, *see United States v. Gertz,* 249 F.2d 662 (9th Cir. 1957), intervenors (and the BZA) contend that where the word "permitted" is used without qualification in the zoning regulations it means "permitted as a matter of right." In support of this position, intervenors cite several sections of the regulations which supposedly "clearly establish" this interpretation. Aside from being unduly selective, the enumeration of those sections highlights the fact that the BZA's interpretation is patently wrong.

The zoning regulations with which we are here concerned are divided into articles which define particular zoning districts and the structures and uses which may exist in those districts. Each of those articles is structured consistently. More importantly, each is structured in a manner antithetical to the BZA's interpretation. The first subsection of each such article (the .1 subsection) is a general one. It explains broadly what the district consists of and the purpose behind having such a district. Significantly, these initial subsections often use the word "permitted" in the exact, unqualified manner of § 7104.2. *See* §§ 3101.1, 3103.1, 3105.1, 5101.1, and 5103.1. Thus the same question of the interpretation of "permitted" that arises in § 7104.2 exists with respect to those articles. That question is immediately resolved, however, by reading on to the ensuing subsections which elaborate upon the opening subsection by stating which uses are permitted as a matter of right (the .3 subsection) and which are permitted by special exception (the .4 subsection). A clarifying example may be useful.

Section 3101 (the first section cited by the BZA in support of its interpretation) is representative:

Section 3101—R–1 Districts (One-Family Detached Dwellings) (Including R–1–A and R–1–B Districts)

3101.1 The R–1 District is designed to protect quiet residential areas now developed with *one-family detached dwellings* and adjoining vacant areas likely to be developed for such purposes. The regulations are designed to stabilize such areas and to promote a suitable environment for family life. For that reason only a few additional and compatible uses are permitted. The *district* is subdivided by different area requirements into R–1–A and R–1–B Districts, providing for *districts* of low and high density, respectively.

\*     \*     \*     \*     \*     \*

3101.3 The following uses are permitted as a matter of right:

\*     \*     \*     \*     \*     \*

3101.4 The following uses are permitted if approved by the Board of Zoning Adjustment subject to the conditions specified in Section 8207 and below in each case:

\*     \*     \*     \*     \*     \*

As may readily be seen, whenever "permitted" is used unqualifiedly in this manner—as it is in § 7104.2—it means permitted in the broad sense of the word, *i. e.,* permitted either as of right (*e. g.,* § 3101.3) or by special exception (*e. g.,* § 3101.4). Moreover, this usage and structure are carried through every relevant section of the zoning regulations. *See* §§ 3102, 3103, 3104, 3105, 4101, 5101, 5103, 5104, 6101, and 6102. To assume that it has been abandoned only in § 7104.2 would be to assume too much. The drafters of the regulations (as noted, the Zoning Commission rather than the BZA) have qualified the word "permitted" when necessary. When not, they have given it its broad meaning.[6]

---

**6.** All of the other sections referred to by the BZA are inapposite. They do not use "permit-

ted" in the same manner as § 7104.2. In each of them the word "permitted" is preceded or

Intervenors and the BZA argue, however, that aside from any question of construction, the petitioners' interpretation should be rejected because it would diminish the rights of owners of property with nonconforming uses to continue a nonconforming use, albeit in another guise. Assuming, arguendo, that such a position might carry some weight in the face of a finding of inconsistent interpretation, it still could not prevail under our laws and decisions, since there is a clear regulatory objective against nonconforming uses.

The statement of purpose of the nonconforming use article contained in § 7101.1 provides in relevant part that: "It is necessary and consistent with the establishment of these *districts* that all uses and *structures* incompatible with permitted uses or *structures* be regulated strictly and permitted only under rigid controls." Further, § 7104.3 states that: "When an existing *nonconforming* use has been changed to a conforming or more restrictive use, it shall not be changed back to a *nonconforming use* or less restrictive use." It is evident from these and other sections of the regulations which restrict nonconforming uses that such uses are not favored.[7] Additionally, any interpretation of the regulations which expands the prerogatives of nonconforming users is undesirable. As we stated in *Silverstone v. Board of Zoning Adjustment*, D.C.App., 372 A.2d 1286, 1290 (1977):

> Despite the protection given by the courts to such substantial property rights as nonconforming uses, the continuance of uses and structures that do not conform to the current zoning restrictions and to the general scheme of desirable land uses militates against the effectiveness of the planning and zoning scheme as a whole.

This judicial pronouncement, taken in conjunction with the requirement that reg-

ulations be interpreted in a manner which best promotes their purpose, obliges us to reject the policy argument advanced by the BZA. *See United States v. Bornstein*, 423 U.S. 303, 310, 96 S.Ct. 523, 528, 46 L.Ed.2d 514 (1976); *National Petroleum Refiners Ass'n v. FTC*, 157 U.S.App.D.C. 83, 100, 482 F.2d 672, 689 (1973), *cert. denied*, 415 U.S. 951, 94 S.Ct. 1475, 39 L.Ed.2d 567 (1974). Accordingly, we conclude that the BZA improperly construed § 7104.2 and therefore erred in granting the application.

*Reversed.*

---

followed by qualifying language. *See* §§ 3101.6 ("the following *accessory buildings* incidental *to the uses permitted by this Section are permitted*"); 3105.5 (similar to the preceding language); 3102.5, 3103.5, 3104.5, 3105.5, and 4101.5 ("incidental to the above uses"); 5101.5, 5102.6, 5103.5, and § 6101.35 ("incidental to the uses otherwise authorized by this Section"); and 7614.11 ("permitted . . . provided that").

7. *See* §§ 7105, 7106, and 7107 of the zoning regulations.