Paul F. INTERDONATO, et
al., Petitioners,

v.

**DISTRICT OF COLUMBIA BOARD OF
ZONING ADJUSTMENT, Respondent.**

No. 80–270.

District of Columbia Court of Appeals.

Argued Nov. 20, 1980.

Decided April 21, 1981.

Whayne S. Quin, Washington, D. C., with whom John F. McCabe, Jr., Washington, D. C., was on brief for petitioners. Norman M. Glasgow and Iverson O. Mitchell III, Washington, D. C., also entered appearances for petitioners.

Leo N. Gorman, Asst. Corp. Counsel, Washington, D. C., with whom Judith W. Rogers, Corp. Counsel, and Richard W. Barton, Deputy Corp. Counsel, Washington, D. C., at the time the brief was filed, were on brief, for respondent.

Before NEWMAN, Chief Judge, and MACK and PRYOR, Associate Judges.

NEWMAN, Chief Judge:

Petitioners seek review of an order of the Board of Zoning Adjustment (hereinafter the Board) vacating an earlier Board order that had granted a special exception to permit petitioners to convert a chancery building into law offices and apartments. The Board stated that it was acting pursuant to this court's decision in *Sheridan-Kalorama Neighborhood Council v. District of Columbia Board of Zoning Adjustment*, D.C.App., 411 A.2d 959 (1979), which had reversed the Board's original decision approving the special exception. In other words, the Board believed that in vacating its order it was simply following the mandate of this court.

Petitioners now assert that the Board erred in vacating its entire order, as the *Sheridan-Kalorama* decision pertained only to the law office use of the building, and not to the apartment use. Petitioners also contend that the Board abused its discretion and acted arbitrarily by failing to consider their argument that the doctrine of equitable estoppel should bar revocation of the special exception.[1] We affirm.

## I

In 1976, petitioners contracted to buy a four-story building on Embassy Row from the Grand Duchy of Luxembourg. They wanted to convert the building from use as a chancery and residence to a law office, with the upper floors to be rented as apartments. Petitioners were advised by the Zoning Administrator's office in August 1976 that their project would require a special exception from the Board. Accordingly, on September 8, petitioners applied for a special exception on behalf of the Grand Duchy of Luxembourg. The Board held a hearing on the application on March 16, 1977. At that hearing a number of parties testified in opposition to the proposed project, including neighborhood residents and property owners, representatives of the local Advisory Neighborhood Commission, and various citizens' associations.

The Board voted on September 7, 1977 to grant the application. The Board issued its written order, accompanied by findings of fact and conclusions of law, on October 14. The Sheridan-Kalorama Neighborhood Council filed a timely motion for reconsideration or stay of the order, followed by a timely petition for review in this court

---

1. Petitioners also complain that the Board failed to consider their requests that (1) the *Sheridan-Kalorama* decision be applied only prospectively, and (2) the Board stay final action pending a possible amendment of the applicable regulations by the Zoning Commission. After reviewing these arguments, we find them both to be without merit. The first is groundless because the Board has no authority to decide not to apply this court's decision to the parties in the case. The second contention is moot because the Zoning Commission has already rejected petitioners' proposed amendment, preferring to conduct a more comprehensive review of the nonconforming use regulations outside the context of this case alone. *See* note 4 *infra*.

when the motion for reconsideration was denied.[2]

The law firm's contract for the purchase of the chancery building required that the sale be closed within thirty days of a favorable Board decision. Consequently, the law firm completed the purchase shortly after the petition for review was filed, and obtained the building permits necessary for the renovation. Petitioners completed the remodeling at a cost of approximately $250,000. The District government issued certificates of occupancy, and the law firm opened its offices on or about November 15, 1978.

Meanwhile, the *Sheridan-Kalorama* case had been argued before this court on October 17, 1978. Six and one-half months later, on May 7, 1979, this court reversed the Board's order, holding that the Board had erroneously interpreted the word "permitted" in § 7104.2 of the Zoning Regulations.[3] Petitioners along with the Grand Duchy of Luxembourg and the Board, petitioned for reconsideration and for rehearing en banc in *Sheridan-Kalorama*, but this court denied the petitions December 24, 1979. The court did, however, specifically invite the Zoning

Commission to amend the regulations if the Commission disagreed with the court's interpretation.[4]

On February 6, 1980, without notice to the parties, the Board voted to vacate its earlier order in accord with this court's decision. On March 5, petitioners filed a motion requesting that the Board hold in abeyance its final order, on the same grounds as those urged in this appeal. The next day, the Board issued its written order vacating approval of the special exception. The order made no reference to the motion to hold in abeyance, and contained no findings of fact or conclusions of law. On March 11, petitioners' counsel was notified by letter that the Board had denied the motion at a meeting on March 5. The letter gave no reasons for the denial.

On March 14, petitioners filed a motion for reconsideration before the Board. The motion was denied April 21:

> [T]he Board concludes that it has committed no error in its Order of March 6, 1980. . . . The Board concludes that the subject Motion of March 14, 1980 presents no evidence that the Board has not already considered.

> [W]e recognize that our disposition of the appeal may be considered by the Zoning Commission to be contrary to its intent in adopting § 7104.2 of the zoning regulations. If that should be true, the Commission has the power to modify the regulations. *See* D.C.Code 1973, § 5–415.

The court also amended footnote 6 of its opinion in *Sheridan-Kalorama* to limit its interpretation of "permitted" to § 7104.2 alone.

Subsequently, on January 10, 1980, petitioners filed an application to amend § 7104.2 by adding the words "as a matter of right" after "permitted". The Zoning Commission denied the application on April 10, 1980:

> The Commission believes that . . . it is not appropriate to consider those changes in the context of this case. The Commission believes that the entire non-conforming use regulations need to be reviewed, to determine whether they are achieving the general policy goal of the Zoning Commission of gradually effecting their elimination. . . . [E]ven to consider the issue of how to regulate changes of uses would be a piecemeal approach to a broader problem.

---

**2.** These proceedings before the Board are set forth in more detail in our opinion in *Sheridan-Kalorama, supra* at 959–60.

**3.** Section 7104.2 states:

> [A] Class II *nonconforming use* [chancery] may be changed to a use [law office] which is permitted in the most restrictive *district* in which the existing *nonconforming use* [chancery] is permitted. [Emphasis in original.]

The Board had always interpreted the word "permitted" to mean "permitted as a matter of right." Thus it approved the special exception because a chancery is first permitted as a matter of right in the SP zone, and a law office is also permitted as a matter of right in the SP zone. This court held in *Sheridan-Kalorama*, however, that "permitted" should be construed to mean permitted *either* as a matter of right *or* by special exception. *Id.* at 962–63. This new definition has the effect of placing harsher restrictions on nonconforming uses, under the facts of this case. The court reasoned that the Board's interpretation was "manifestly inconsistent" with the broader zoning policy of discouraging nonconforming uses. *Id.* at 962.

**4.** In footnote 2 of its December 24, 1979 order, this court stated:

## II

We turn to petitioners' argument that the Board erred in vacating its entire order. While conversion of the chancery into a law office was held impermissible in *Sheridan-Kalorama, supra,* the court's opinion did not address the lawfulness of the residential portion of the project. In fact, under this court's new interpretation of the regulations, the apartment use may be permissible.[5] Nevertheless, we cannot say that the Board acted improperly in vacating its entire order. The *Sheridan-Kalorama* opinion did not purport to reverse *part* of the Board's order, but simply stated that the Board had "erred in granting *the* application." *Id.* at 963 (emphasis added). Although the court's decision is actually inconsistent with only a part of that application, the Board was presented with a single, unitary application, and a single, unitary order. The Board was bound to implement the literal terms of this court's mandate. And it did just that: it vacated the order and denied petitioners' application "pursuant to the Order of the Court."

We note that the harshness of our conclusion is substantially mitigated by the fact that petitioners have filed a new application with the Board seeking reapproval of a special exception solely for the apartments in the building.[6] Our decision is, of course, without prejudice to that pending application.[7]

## III

Finally, we turn to petitioners' contention that the Board abused its discretion by failing to consider the argument that it should be estopped from vacating its prior decision. We are unable to discern from the Board's cursory orders whether or not it actually considered this argument. Nevertheless, we conclude that petitioners are not entitled to relief on this ground. First, contrary to petitioners' argument, the Board could not have abused its discretion by vacating its order, for it *had no* discretion. Once we issued our opinion in *Sheridan-Kalorama,* the Board had no authority to decline to follow it for any reason, and thus had no choice but to vacate the order.

Second, despite the Board's failure to make findings, the record itself conclusively shows that as a matter of law petitioners cannot make out a claim of equitable estoppel. The doctrine of equitable estoppel is judicially disfavored in zoning cases because of the important public interest in the integrity and enforcement of the zoning regulations. *Goto v. District of Columbia Board of Zoning Adjustment,* D.C. App., 423 A.2d 917, 925 (1980); *Wieck v. District of Columbia Board of Zoning Adjustment,* D.C.App., 383 A.2d 7, 10 (1978); *see Nathanson v. District of Columbia Board of Zoning Adjustment,* D.C.App., 289 A.2d 881, 884 (1972). Only by showing each of the following elements could petitioners successfully invoke an estoppel claim: (1) expensive and permanent improvements, (2) made in good faith, (3) in justifiable and reasonable reliance upon; (4) affirmative acts of the District government, (5) without notice that the improvements might violate the zoning regulations; and (6) equities that strongly favor the petitioners. *See Goto, supra* at 925 n.15; *Wieck, supra* at 11; *Smith v. District of Columbia Board of Zoning Adjustment,* D.C.App., 342 A.2d 356, 359 (1975); *District of Columbia v. Cahill,* 60 App.D.C. 342, 344, 54 F.2d 453, 454–55 (1931).

---

5. The most restrictive districts in which a chancery is permitted (as a matter of right *or* by special exception) are R–5–D, and R–5–C, the zones for *medium-high and high density apart*ments. *See Sheridan-Kalorama, supra,* at 961 (citing Zoning Regulations, § 3105). Thus, since apartments are permitted in the most restrictive district in which chanceries are permitted, it appears that a chancery may be converted into apartments. *See* Zoning Regulations, § 7104.2.

6. Petitioners have also sought a use variance to permit operation of their law offices.

7. If an applicant meets the requirements for a special exception, the Board *must* grant the application. *See Dupont Circle Citizens Ass'n v. District of Columbia Bd. of Zoning Adjustment,* D.C.App., 390 A.2d 1009, 1011 (1978).

At all relevant times here, petitioners were fully cognizant of the legal challenge to their proposed development; they had ample notice that the Board's first order was not final because judicial review was being sought. Thus, the petitioners could not have relied justifiably or reasonably upon the Board's decision. When the application for a special exception was filed, opposition to the application was immediate and strong. And that opposition was unrelenting as the case progressed. On March 15, 1977, the day before the Board's hearing, the Sheridan-Kalorama Neighborhood Council submitted a letter to the petitioners setting forth its objections, including the legal contention that this court ultimately found meritorious. When the Board rendered a favorable decision for the petitioners, the Council promptly filed a motion for reconsideration, followed by a timely petition for review in this court. The conduct that petitioners characterize as "reliance" occurred after the petition for review was filed, but before a final adjudication of their rights by this court. Petitioners' decision to proceed with their investment under those circumstances was solely at their risk. They were not entitled to rely upon their own assumptions that this court's decision would be favorable to them.

The cases relied upon by petitioners are inapposite because they involve detrimental reliance after a party had reason to believe that the matter had been finally resolved in his favor. *See Wieck, supra* at 9; *Smith, supra* at 357–59; *Cahill, supra,* 60 App.D.C. at 342–44, 54 F.2d at 453–54. Moreover, in none of these cases had the Board's initial action been reversed by this court. Here, by contrast, petitioners had no reason to believe that the Board's initial decision was final. They were well aware of the pending petition for review in this court. Thus there can be no claim of unknowing, justifiable reliance upon the Board's order. *See Nathanson, supra* at 884–85.

Accordingly, we conclude that the Board did not err in vacating its order pursuant to our mandate in *Sheridan-Kalorama, supra.*

*Affirmed.*