**John SAAH, Petitioner,**

v.

**DISTRICT OF COLUMBIA BOARD OF ZONING ADJUSTMENT, Respondent.**

**No. 80–88.**

District of Columbia Court of Appeals.

Argued April 16, 1981.

Decided July 29, 1981.

Donald Cefaratti, Jr., Washington, D.C., for petitioner.

Leo N. Gorman, Asst. Corp. Counsel, Washington, D.C., with whom Judith W. Rogers, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for respondent.

Before KELLY, FERREN and PRYOR, Associate Judges.

KELLY, Associate Judge:

In this case we are called upon to review a decision of the Board of Zoning Adjustment denying petitioner a variance that would permit him to retain a structure which exceeds the maximum allowable percentage of lot occupancy. We hold that the zoning authorities, having approved, but later cancelled petitioner's building permit, are estopped from denying the variance sought. Therefore, we reverse, and remand for disposition of petitioner's application in accordance with this opinion.

I

Petitioner is the owner of improved property located at 1521 Church Street, N.W., within an R–5–B District. He purchased this property on March 15, 1978, at which time the lot contained a single family dwelling consisting of two stories and a basement, with a certificate of occupancy, issued July 22, 1952, permitting use of the second floor as a tenement house. On May 9, 1978, a building permit was issued allowing petitioner to renovate the structure to include three apartments. Construction was proceeding according to plan when, in September of 1978, the rear half of the building collapsed. Petitioner was then advised by a structural engineer to replace the original masonry walls above the first floor. New plans were prepared for the renovation, and new building permits were sought from the city government. On September 8, 1978, two permits were issued to petitioner: the first was for an "addition to a three story apartment house brick/frame as per applicant's plan and plat," and the second permit covered revision of the permit originally issued on May 9, 1978. Petitioner again began construction.

More than two months later, on November 17, 1978, the two permits were cancelled and petitioner was directed to cease work on the ground that approval for the permits had been erroneously granted. The problem, which, if it had been discovered in September, would have precluded approval of the plans in the form in which they were

submitted at that time, was that the structure exceeded, by 123.91 square feet, the maximum lot occupancy of 60% applicable in the R–5–B zone.[1] The reason the permits had been approved in September was that in computing the area covered by the proposed structure, a passageway alongside the east side of the first floor of the building was not taken into account. The passageway is not enclosed at either end; however, the second and third floors project over the passageway and abut the western wall of the building next door. The maximum lot occupancy for petitioner's property is 1,254 square feet. Before renovation the structure covered 1,037 square feet; when the new construction is included, adding the projection over the passageway, the structure covers an additional 340.91 square feet. Thus, the total lot occupancy is then 1,337 square feet, or somewhat less than 65%. The Board found that at the time the permits were cancelled the renovation was 60% complete.

On November 30, 1978, the Corporation Counsel, in a memorandum to the Acting Chief of the Zoning Regulations Division, stated that the "circumstances establish sufficient elements of an estoppel to require the District Government to set aside the direction to cease work, pending timely application for an area variance." In Corporation Counsel's view, not all elements of an estoppel, in particular reasonable reliance, had yet been established, and a formal hearing was thought to be necessary to make that determination.

On December 8, 1978, petitioner was informed by letter that the order to cease work was lifted, provided (1) an application for an area variance was filed by December 15, and (2) a revision permit was secured authorizing construction of a rear-entry way not shown on the original plans. Petitioner made timely filing of the application for an area variance on December 15, 1978, and, after several hearings before the Board of Zoning Adjustment, the application was denied on January 4, 1980.

1. District of Columbia Zoning Regulation § 3303.1.

## II

Although the doctrine of equitable estoppel has traditionally not been favored when sought to be applied against a government entity, *see* Note, *Equitable Estoppel of the Government*, 79 Colum.Law Rev. 551, 552–54 (1979), it is accepted that in certain circumstances an estoppel may be raised to prevent enforcement of municipal zoning ordinances. *District of Columbia v. Cahill*, 60 U.S.App.D.C. 342, 54 F.2d 453 (1931); *see Wieck v. District of Columbia Board of Zoning Adjustment*, D.C.App., 383 A.2d 7, 11 (1978); A. Rathkopf, The Law of Zoning and Planning, ch. 67, § 2 (4th ed. 1980).

 The elements that must be shown in order to raise an estoppel against enforcement of a zoning regulation are: (1) that a party, acting in good faith, (2) on affirmative acts of a municipal corporation, (3) makes expensive and permanent improvements in reliance thereon, and (4) the equities strongly favor the party seeking to invoke the doctrine. *Wieck v. District of Columbia Board of Zoning Adjustment, supra*, at 11. Furthermore, we held in *Nathanson v. District of Columbia Board of Zoning Adjustment*, D.C.App., 289 A.2d 881, 884 (1972), that reliance by the party must be justified.

 The Board concluded that in this case some, but not all, of the above elements were present. Given the expertise of an administrative agency, we are generally bound by its decision if it is supported by, and in accordance with, reliable, probative and substantial evidence in the whole record, and the agency's conclusions flow rationally from its findings. *Stewart v. Board of Zoning Adjustment*, D.C.App., 305 A.2d 516 (1973). However, where the agency's final decision rests on a question of law, the reviewing court has the greater expertise, and the agency decision is therefore accorded less deference. *See Gordon v. District Unemployment Compensation Board*, D.C.App., 402 A.2d 1251, 1254 (1979); B. Mezines, J. Stein & J. Gruff, Administrative Law § 51.01 (1977); F. Cooper, State Administrative Law, vol. 2, at 706–07, 721–22 (1965). Based upon the facts established

in this case we hold the Board erred in concluding the elements of an estoppel were not present.

## III

The affirmative act of the District of Columbia, upon which petitioner relied in constructing the building, was the issuance of the permits on September 8, 1978. There is no allegation that the plans that were approved on that day were submitted in bad faith. Respondent does contend that petitioner failed to establish that he made expensive and permanent improvements relying upon the issuance of the permits. We disagree. The Board specifically found that "[a]s of November 17, 1978, approximately 60% of the building had been completed." (Finding No. 13). That is a substantial portion of the total project and, even without documentary evidence indicating the precise amount of money expended up to that point, the Board's finding must be considered sufficient to satisfy the requirement of expensive repairs of a permanent nature, given that petitioner had undertaken a major reconstruction of the building, including replacement of masonry walls above the first floor. Furthermore, although neither side has referred to it, there was the unchallenged testimony of petitioner that he had expended "over $225,000 building that building" and that the cost of complying with the regulations would be "about $110,000."

Respondent argues petitioner's reliance upon the permits in beginning work was not justified. In *Nathanson v. District of Columbia Board of Zoning Adjustment, supra*, we held estoppel was not available to a party who sought to prevent enforcement of a condition that a 42 inch masonry wall be constructed even though the building permit issued for construction of the storage facility did not mention the wall. We rejected the assertion that reliance on the building permit was justified, since the party had had actual notice of the condition when a preliminary order granting a special exception was issued six weeks earlier. Recently, we held in *Interdonato v. District*

*of Columbia Board of Zoning Adjustment,* D.C.App., 429 A.2d 1000 (1981), that petitioners could not have justifiably or reasonably relied upon a Board order which they were fully aware was under appeal and therefore not yet final.

In the instant case, it can at most only be argued that petitioner, or his architect, *should have known* that the project, as presented in September, exceeded the maximum lot occupancy. However, the same can be said for the official who approved the plans, and we will not go so far as to decide that any of them were negligent in failing to discover the problem at that time. In hindsight, there is no question that the portion of the upper floors which extends over the passageway must be included in calculating the percentage of the lot occupied by the structure.[2] Nevertheless, we do not consider petitioner's reliance upon approval of the permit applications to have been unjustified.

The final element of estoppel that must be considered is whether the equities strongly favor petitioner. We are certain that they do. Petitioner has expended significant amounts of money and effort on this project, both at the construction site and before the Board. If the Board were not estopped from enforcing the maximum lot occupancy in this case, petitioner would be compelled to undertake substantial reconstruction and perhaps dismantle the entire building. Equity, which will not require a wasteful act, will not permit such a result where the public's interest in enforcement is only minimal,[3] as it is here, where petitioner exceeds the maximum lot occupancy by less than 5%.

Therefore, for the above reasons, we hold the Board of Zoning Adjustment is estopped from denying petitioner's application for a variance permitting the structure at 1521 Church Street to exceed by 123.91 feet the maximum percentage of lot occupancy.

*Reversed and remanded.*

---

**2.** We accept the Board's finding No. 26 that the definitions of "percentage of lot occupancy" and "building area" contained in § 1202 of the Zoning Regulations make it obvious that "the area on the east side of the subject lot covered by the building at the second and third stories must be included in the percentage of lot occupancy."

**3.** Although estoppel is judicially disfavored in zoning cases because of the important public interest in the enforcement and integrity of Zoning Regulations, *Interdonato v. District of Columbia Board of Zoning Adjustment, supra,* we are satisfied the injury to the public in this case will be minimal. At the hearings before the Board, the objections raised to petitioner's structure related to its effect on the property next door. We decide only that the Board of Zoning Adjustment is estopped from enforcing the regulation, and do not reach the question of the effect of the estoppel on a claim made by a neighboring landowner. *See Goto v. District of Columbia Board of Zoning Adjustment,* D.C. App., 423 A.2d 917, 925 n.15 (1980).