Frank P. MURRAY, et al., Petitioners,

v.

DISTRICT OF COLUMBIA BOARD OF ZONING ADJUSTMENT, Respondent.

No. 89–646.

District of Columbia Court of Appeals.

Argued Feb. 20, 1990.
Decided April 9, 1990.

Benny L. Kass, with whom Catherine Haley Rost, Washington, D.C., was on the brief, for petitioners.

Lutz Alexander Prager, Asst. Deputy Corp. Counsel, with whom Herbert O. Reid, Sr., Acting Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for respondent.

Before TERRY, STEADMAN and FARRELL, Associate Judges.

Petition for Review of an Order of the District of Columbia Board of Zoning Adjustment

PER CURIAM:

Petitioners challenge a decision of the District of Columbia Board of Zoning Adjustment (the Board) that proposed Lot 39, Square 1995, owned by petitioners, does not meet the 50–foot minimum average width requirement for a lot situated in an R–1–B zoning district, as required by 11 DCMR § 401.3 (1987). Petitioners contend primarily that the Board acted arbitrarily and capriciously in concluding that the method by which the Zoning Administrator measured the proposed lot—using a formula for measuring irregularly shaped lots employed by that office since 1977 [1]—yield-

1. The method used by the Zoning Administrator was to measure the width of the lot at ten foot intervals from front to back, then add the

ed an "absurd" and impermissible result as applied to Lot 39, because the calculation depended upon "the addition [to the rear of the lot] of an irregular panhandle-like configuration creating unbuildable portions of [the] lot in order to show the final average width." [2] Bearing in mind our obligation to uphold the Board's interpretation of a zoning regulation unless that construction is "plainly erroneous or inconsistent with the regulation," *George Washington Univ. v. District of Columbia Bd. of Zoning Adjustment*, 429 A.2d 1342, 1348 (D.C.1981), *quoting Udall v. Tallman*, 380 U.S. 1, 16–17, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965), we affirm the Board's order.

■ We reject first petitioners' argument that the Board exceeded its jurisdiction because it reversed the Zoning Administrator's ruling even though the intervenors did not allege and the Board "did not find that the Zoning Administrator's interpretation of the definition of lot width was erroneous or inconsistent with the Zoning Regulations." To the contrary, the Board found that the Zoning Administrator's "method of calculating the lot width resulted in an erroneous measurement" and that the proposed Lot 39, as measured, did not "truly [have] a minimum average width of 50 feet...." [3] Having reached this conclusion, the Board was obliged to reverse the Zoning Administrator's ruling. *See Keefe Co. v. District of Columbia Bd. of Zoning Adjustment*, 409 A.2d 624, 625 (D.C.1979) ("[I]t is the responsibility of the BZA to interpret the [zoning] regulations"). We thus have before us an order of the Board appropriate for review. D.C.Code § 1–1510(a) (1987).

■ Petitioners' argument that the Board acted arbitrarily because it applied an "inherently subjective" standard in finding Lot 39 to be incompatible with the minimum average width requirement is also unavailing.[4] The upshot of petitioners' argument is that the Board is required to accept *any* configuration of a lot so long as the Zoning Administrator's normal method of measuring irregularly shaped lots, when applied to it, yields an average 50–foot width. We do not think the Board's authority can be hamstrung in this way. The regulation requires that "the width of the lot shall be the *average* distance between the side lot lines." 11 DCMR § 199 (emphasis added). In construing the regulation, the Board could reasonably determine that each measurement of width along the length of the lot (front to back) should at least roughly approximate the average and that, conversely, the computed average should not depend on "[t]he addition of [a] panhandle ... [which] does not significantly contribute to the required average lot width." The Board's concern that the needed flexibility in treating irregularly shaped lots not produce "distorted average[s]" and hence "absurd results" lies well within its primary jurisdiction in administering the zoning laws. Stated otherwise, the Board must have authority to reject subdivided lots that reach minimum width requirements only by unnatural application of an otherwise valid method of measurement. We thus find no reason to reject as arbitrary or capricious the Board's finding that Lot 39 did not have a true minimum average width of fifty feet, as required by the regulation.[5]

widths of each increment and divide the total footage by the number of lines or increments.

2. A copy of the record diagram showing the proposed configuration of Lot 39 is attached to this opinion.

3. Likewise, in their notice of appeal to the Board, Intervenors—Advisory Neighborhood Commission 3G and a group of neighbors—asserted that the "average lot width of Lot 39, Sq. 1995 was inaccurately calculated."

4. The applicable zoning regulation, 11 DCMR § 199 (1987), defines width of lot in part as "the distance between the side lot lines, measured along the building line; except that, in the case of an irregularly shaped lot, the width of the lot shall be the average distance between the side lot lines."

5. Indeed, we think it is the capricious result achieved by application of the normal method to *petitioners'* lot that is apparent when one considers that a 50–foot average width could only be obtained by measuring from front to back at 10–foot intervals. If the process were reversed and the measurement taken from back to front, petitioners concede that the property would fall short of the 50–foot minimum average width.

We find a similar lack of merit in petitioners' claim that the Board has retroactively applied a "new interpretation of average lot width." Regardless of the method used by the Zoning Administrator since 1977, neither the Board nor this court has approved a single method for measuring oddly configured lots or held that a single measurement must be used in all circumstances, no matter how unnatural the result. In *Draude v. District of Columbia Bd. of Zoning Adjustment*, 527 A.2d 1242, 1253 (D.C.1987), we stated that the Board may "apply different standards to different situations if each standard is consistent with the regulation and the situations are different in a way that makes it reasonable to use different criteria." To paraphrase *Draude*, in this case, the Board found "the situations [as between petitioners' lot and other irregularly shaped lots] ... different" in a way that made *un*reasonable the application of a measurement tool valid for many such lots.

Finally, there is no substance to petitioners' claim that "the District" is estopped from seeking reversal of the Zoning Administrator's ruling given petitioners' good faith reliance upon it. It is the Board, not the Zoning Administrator, which has final administrative responsibility to interpret the zoning regulations. *See* D.C.Code § 5-424(g)(4) (1988); *Keefe Co. v. District of Columbia Bd. of Zoning Adjustment, supra*, 409 A.2d at 625. Petitioners were aware of the 50-foot minimum width requirement when they purchased the property in question. Their previous application for a variance to permit building of three houses on the property had been denied. That they nonetheless made commitments for architectural plans on receiving the Zoning Administrator's ruling, despite knowledge of the neighborhood opposition to their plans, invites application of the "self-created hardship rule," *see Foxhall Citizens Ass'n v. District of Columbia Bd. of Zoning Adjustment*, 524 A.2d 759, 761 (D.C.1987) (variance inappropriate when circumstances rendering property incapable of use in accordance with land use restrictions are caused or created by the landowner), and certainly precludes application of estoppel given the likelihood that the Administrator's ruling would be appealed. *See Interdonato v. District of Columbia Bd. of Zoning Adjustment*, 429 A.2d 1000, 1003-04 (D.C.1981) (party cannot justifiably rely on non-final BZA action still subject to review).[6]

The decision of the Board is, accordingly, *Affirmed.*

---

Our discussion in the text is sufficient to dispose of petitioners' argument that the standard applied by the Board is unconstitutionally vague. *See Nova Univ. v. Educational Inst. Licensure Comm'n*, 483 A.2d 1172, 1188 (D.C. 1984), *cert. denied*, 470 U.S. 1054, 105 S.Ct. 1759, 84 L.Ed.2d 822 (1985). Nor was the Board's decision a taking without just compensation. *See Hornstein v. Barry*, 560 A.2d 530, 537 (D.C. 1989) (en banc).

**6.** We assume solely for purposes of decision here, without deciding, that estoppel could bar an appeal of the Zoning Administrator's ruling brought—as here—by neighboring landowners. *See Saah v. District of Columbia Bd. of Zoning Adjustment*, 433 A.2d 1114, 1117 n. 3 (D.C.1981); *Goto v. District of Columbia Bd. of Zoning Adjustment*, 423 A.2d 917, 925 n. 15 (D.C.1980).