Angene G. **RAFFERTY,**
et al., **Petitioners,**

v.

**DISTRICT OF COLUMBIA ZONING COMMISSION, Respondent.**

No. 93–AA–871.

District of Columbia Court of Appeals.

Argued March 28, 1995.
Decided July 27, 1995.

Scott Rafferty, for petitioners. Catherine M. Rafferty was on the brief, for petitioners.

Martin B. White, Asst. Corp. Counsel, with whom Vanessa Ruiz, Corp. Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corp. Counsel, were on the brief, for respondent.

Before TERRY and FARRELL, Associate Judges, and BELSON, Senior Judge.

FARRELL, Associate Judge:

In *Rafferty v. District of Columbia Zoning Comm'n*, 583 A.2d 169 (D.C.1990) (*Rafferty I*), this court remanded the instant case to the Zoning Commission for consideration of several issues, chief of which was petitioners' claim that the District of Columbia should be estopped from enforcing Planned Unit Devel-

opment (PUD) restrictions on the basis of which the District had issued a stop work order (rescinding an earlier construction permit) terminating construction of a two-story addition to petitioners' townhouse.

■ Following a hearing, the Commission found that petitioners had failed to meet several of the requirements for estoppel. *See Interdonato v. District of Columbia Bd. of Zoning Adjustment,* 429 A.2d 1000, 1003 (D.C.1981).[1] On review, this court must sustain that decision if the agency has made findings of fact on each material contested issue that are supported by substantial evidence in the record and if the ultimate conclusions flow rationally from the factual findings. *George Washington Univ. v. District of Columbia Bd. of Zoning Adjustment,* 429 A.2d 1342, 1345 (D.C.1981).

■ We sustain the Commission's rejection of the estoppel claim because its conclusion that petitioners had constructive notice of the PUD restrictions, hence could not justifiably rely on the issuance of the building permit, is supported by and flows rationally from substantial evidence in the record. The Article 75 (or PUD) Covenant, which was recorded and included in the materials petitioners admittedly received in connection with closing, as well as the information they received from their title search on the property, constitute "facts or circumstances reasonably sufficient to put a person . . . upon inquiry [notice] which, if pursued with proper diligence, would lead to the discovery of the actual condition of the title"—including the PUD restrictions. *Rosenthal v. J. Leo Kolb, Inc.,* 97 A.2d 925, 927 (D.C.Mun.App.1953). *See also Fireison v. Pearson,* 520 A.2d 1046, 1050 (D.C.1987) (applying Maryland law that person has constructive notice if "the means of knowledge are at hand").

Specifically, echoing the rule enunciated earlier in *Rosenthal, supra,* we have said that "[a] purchaser is held to be on inquiry notice where he or she is aware of circumstances which generate *enough uncertainty*

about the state of title that a person of ordinary prudence would inquire further about those circumstances." *Clay Properties, Inc. v. Washington Post Co.,* 604 A.2d 890, 895 (D.C.1992) (en banc) (emphasis added). Here, the very most petitioners can reasonably contend is that the information in their possession generated "uncertainty" sufficient to require additional inquiry on their (or their attorney's) part before they relied on the issuance of the building permit and went ahead with construction. It is not disputed, first, that both Zoning Commission Order No. 195 and BZA Application (Order) No. 12636 were recorded on the land records as exhibits to the Article 75 Covenant restricting use of petitioners' property. The purpose of such recordation, self-evidently, is to give interested persons "the means . . . at hand," *Fireison, supra,* to learn the true state of title of the affected property. Second, petitioners' title search concededly revealed to them the existence of "a Covenant between [W.C. & A.N.] Miller [Company] and the District [of Columbia] dated June 23, 1978, recorded September 5, 1978, and re-recorded September 6, 1978"—that is, the Article 75 Covenant and its exhibits.

Finally, petitioners admitted receiving in their closing materials a copy of the Article 75 Covenant, which recites on its face that the Miller Company (the seller) was constructing a "planned unit development . . . in accordance with plans approved by the Zoning Commission . . . under Order No. 195 issued December 8, 1977, in Zoning Case Nos. 75–18F/77–16, attached hereto as *Exhibit B;* and . . . [as] further processed before the Board of Zoning Adjustment, D.C. and approved by that Board in Application No. 12636, attached hereto as *Exhibit C . . . .*" The Article 75 Covenant goes on to say expressly that "[t]he terms and conditions of the Zoning Commission's approval . . . under Order No. 195 . . . and the [BZA's] approval under B.Z.A. Order No. 12636 are incorporated herein by reference and shall be con-

---

1. The elements of estoppel are:
    (1) expensive and permanent improvements, (2) made in good faith, (3) in justifiable and reasonable reliance upon, (4) affirmative acts of the District government, (5) without notice

that the improvements might violate the zoning regulations, and (6) equities that strongly favor the petitioners.
*Interdonato,* 429 A.2d at 1003.

sidered a part of this Covenant"; and that "those conditions enumerated in *Exhibit B* [*i.e.*, Order No. 195] and as modified in Exhibit C [*i.e.*, Order No. 12636], shall continue as covenants running with the land and binding upon Owner, its successor and assigns."

■ Despite their possession of this information, petitioners assert that when the Miller Company at settlement gave them incorrect exhibits (*i.e.*, certain covenants related to easements rather than the two Zoning Commission and BZA Orders) attached to their copy of the Article 75 Covenant, they could not fairly be expected to distinguish an easement covenant from an agency order, and so erroneously but *reasonably* believed there were no other restrictions on their use of the property. We cannot agree. At the very least, a reasonable person equipped with the information petitioners had would have been "uncertain[ ]" as to the restrictions on his or her title, *Clay Properties, supra,* and—aided by counsel, as petitioners were— would have made further record inquiry. Petitioners instead relied solely upon the apparent absence of a reference to the PUD on the zoning map and the issuance of a construction permit by the Zoning Administrator (rescinded after they had incurred expenses). While the latter act may be assumed to have established one factor in the estoppel analysis (an "affirmative act[ ] of the District government"), *Interdonato*, 429 A.2d at 1003, it does not answer the question whether petitioners justifiably and reasonably relied upon it, *id.*—a question the Commission, in all the circumstances, properly answered against them.[2]

■ Petitioners' reliance on *Saah v. District of Columbia Bd. of Zoning Adjustment,* 433 A.2d 1114 (D.C.1981), is misplaced. *Saah* held, in the circumstances of that case, that the zoning applicant's constructive knowledge of the unlawfulness of the requested variance did not defeat his claim of estoppel based on the erroneous approval of the plans by a District official, because the same constructive knowledge could be imputed to the official. *Id.* at 1117. But *Saah* announced no general rule excusing an applicant's unjustified and unreasonable reliance on such approval. That fact is confirmed by the court's previous decision in this case, *Rafferty I,* where we set forth "justifiable and reasonable reliance" as an independent element of estoppel on which petitioners had the burden of proof—a burden perforce imposed on them inasmuch as "[e]stopping a municipality from enforcing the law must be, at best, the rare exception, not the rule," and is "'judicially disfavored.'" *Rafferty I,* 583 A.2d at 175 (citation omitted). Therefore, we remanded to the Commission to make express findings as to this (and, if necessary, the other) element(s) of estoppel, stating that we could not "evaluate" the District's claim "that the Raffertys' reliance on the building permit was unreasonable" until the Commission "first makes findings, *inter alia,* with respect to 'what [the Raffertys] knew and when [the Raffertys] knew it,' (or at least what they *should* have known, and when)." *Id.* at 176 n. 6 (emphasis added).[3] This remand would have been pointless had we regarded *Saah* as relieving petitioners of the need to show justifiable and reasonable reliance.[4]

■ Petitioners also assign for review a variety of asserted procedural and evidentiary errors by the Commission. We find none sufficient to warrant disturbing the agency's

---

2. Although our holding on this issue rests on no particular deference to the Commission's analysis, there is no merit, in any event, to petitioners' suggestion that the Commission uncritically adopted proposed findings and conclusions of a successor-intervenor on the estoppel issue.

3. Thus, we recognized implicitly that petitioners had the burden as well to satisfy the fifth element of estoppel, *see* 583 A.2d at 175 (quoting *Interdonato*, 429 A.2d at 1003), *viz.*, that they were "without notice"—actual or *constructive*—"that the improvements might violate the zoning regulations."

4. *Saah* differs markedly from this case also in that it did not arise within the carefully regulated context of a PUD development, *see, e.g., Blagden Alley Ass'n v. District of Columbia Zoning Comm'n,* 590 A.2d 139, 145–46 (D.C.1991); *Dupont Circle Citizens Ass'n v. District of Columbia Zoning Comm'n,* 426 A.2d 327, 331 (D.C.1981), so that it was possible for the court to say in *Saah,* as it is not here, that the petitioner's construction, though illegal, would work "[minimal] injury to the public." *Saah,* 433 A.2d at 1117 n. 3.

decision. The fact that the Commission conducted a fact-finding hearing refutes the contention that it prejudged the issue of petitioners' knowledge of the PUD restrictions in its preliminary order on remand. Petitioners likewise have not shown prejudice from remarks made by the then-Executive Director of the Zoning Secretariat or as a result of the belated recusal of Commissioner Boasberg. In a similar vein, petitioners were not prejudiced by the Commission's assumed lack of authority to subpoena witnesses, since the Commission's conclusion that petitioners had not established the elements of estoppel rested primarily on petitioners' own testimony and evidence.[5]

■ We find no error, and no resultant prejudice to petitioners in any event, in the Commission's refusal to require the District to search for and produce prior statements made by witnesses who testified at the hearing. *See K.G.S., Inc. v. District of Columbia Alcoholic Beverage Control Bd.*, 531 A.2d 1001, 1002 n. 2 (D.C.1987) ("principles of fair play" underlying Jencks Act may allow examination of testifying *police* witness's contemporaneous notes in administrative agency decision). Nor was there error in the Commission's decision permitting the substitution of Eleanor Conway as a party, or in its

consideration of the testimony of the original party-opponents, the Sampertons, who had been subject to cross-examination at the time but later withdrew from the action.[6]

■ Petitioners contend that the Commission's disallowance of their requested modification violated the District's Comprehensive Plan, 10 DCMR § 303 (1994). The Commission disagreed, and we sustain that determination as reasonable. *See Marshall v. District of Columbia Rental Hous. Comm'n*, 533 A.2d 1271, 1274 (D.C.1987). Finally, even assuming (despite our decision in *Rafferty I*) that petitioners may still litigate the issue of whether their proposed modification was inconsistent with the PUD restrictions, there was substantial evidence in the record supporting the Commission's finding of inconsistency.[7]

Accordingly, the decision of the Commission is

*Affirmed.*

■

5. For that reason, we leave to another case the issue whether the Commission correctly determined that it lacked the authority to subpoena witnesses.

6. We likewise find no prejudice to petitioners stemming from the Commission's failure to preserve certain evidence, including the original PUD plans.

7. Petitioners' argument rests on their assertion that the Commission has lost the original PUD plans submitted by the developer, the Miller Company, and approved by the Commission in Order No. 195, and that therefore nothing exists on which to base the conclusion that the addition is inconsistent. They submit that because Order No. 195 provides that the approved plans were those dated March 8, 1977, the plans placed into evidence by the Miller Company, marked "revised February 2, 1978," and on which actual construction of the PUD was based, were not the approved plans. The argument seems to be that since Miller did not construct the PUD according

to the approved plans, nothing petitioners propose to do now can be considered "inconsistent."

The argument fails on its basic premise that the PUD was not constructed according to the approved plans. There was substantial evidence that the plans placed in the record by the Miller Company were the "approved" plans according to which the Miller Company was obligated to construct the PUD. Order No. 195 provides that "[t]he final site plan and subdivision plan shall be based on the revised site and grading plans, dated *March 8, 1977* and revised November 3, 1977" (emphasis added). What petitioners' argument fails to take into account is the subsequent BZA Order No. 12636, which specifically acknowledges that the plans of March 8, 1977, "were revised on *February 2, 1978*, to conform to Order No. 195," including "adjustment of some lot lines" (emphasis added). Thus, the Commission's decision that the modification would be inconsistent with the Article 75 Covenant is supported by substantial evidence in the record.